KNIGHT, David and Knight, Kathleen

v.

TAPE, INC., Appellant,

v.

GENERAL MILLS, INC.

No. 90–1577.

United States Court of Appeals,
Third Circuit.

Argued Jan. 23, 1991.

Decided June 7, 1991.

Rehearing and Rehearing In Banc
Denied July 29, 1991.

---

J. Brian Durkin (argued), John Gerard Devlin & Associates, Philadelphia, Pa., for appellant Tape, Inc.

S. Stanton Miller, Jr. (argued), Dunn and Miller, Media, Pa., for appellees David and Kathleen Knight.

Joanne R. Jenkins (argued), Thompson and Pennell, Philadelphia, Pa., for appellee General Mills, Inc.

Before BECKER, HUTCHINSON, Circuit Judges and SMITH, District Judge.[*]

## OPINION OF THE COURT

BECKER, Circuit Judge.

This appeal presents the question of the constitutionality, under the due process and equal protection clauses of the Pennsylvania and United States Constitutions, of Pennsylvania Rule of Civil Procedure 238, 42 Pa. Cons.Stat.Ann. Rule 238 (Purdon Supp.1990). Rule 238 mandates the payment of delay damages by defendants to plaintiffs in tort cases under certain circumstances. The appeal also requires us to decide the appropriateness of apportionment of a delay damages award among joint tortfeasors when one of them is a third-party defendant who, under federal practice, is not directly liable to the plaintiff but only to the original defendant who impleaded it. For the reasons that follow, we hold that Rule 238 passes constitutional muster, and that such apportionment is appropriate.

## I. PROCEDURAL HISTORY AND THE PARTIES' CONTENTIONS

On March 24, 1986, David Knight sustained a serious industrial injury.[1] Knight and his wife Kathleen commenced a civil action against Tape in the Court of Common Pleas of Delaware County, Pennsylvania, alleging that the machine was improperly manufactured and designed. Tape removed the action to the district court for the Eastern District of Pennsylvania on diversity grounds, 28 U.S.C. § 1332, and also filed a third-party complaint impleading General Mills as a third-party defendant seeking contribution and indemnity.

The district court set an initial discovery deadline of December 12, 1988. Following the joinder of General Mills, Tape requested and received an extension of the discovery deadline until February 12, 1989. On the motion of General Mills, the deadline again was extended until May 26, 1989. The case was placed in the district court's trial pool on May 30, 1989, but due to the court's backlog was not brought to trial until February 5, 1990.

While awaiting trial, the Knights made a written settlement demand of $600,000. Tape responded with a written offer of $50,000. On the first day of trial, the Knights suggested that they might be willing to settle for $300,000. Tape and General Mills responded with a combined oral offer of $150,000, to be borne equally by the two.

---

[*] Honorable D. Brooks Smith, United States District Judge for the Western District of Pennsylvania, sitting by designation.

1. Knight was employed by Goodmark Foods to superintend a bank of machines that cut raw food into small pieces using rotating blades housed in a removable cutting head. These machines had been manufactured by Tape according to design specifications prepared by General Mills. On the day of his injury, Knight was attempting to remove the cutting head from one machine in order to place it on another, malfunctioning machine. Due to the noise and vibration generated by the other machines in the room, as well as the lack of any device to warn that the cutting blades were in operation, Knight did not realize that the machine was already engaged. Because one of the two handles designed to be held in removing the head was missing from the machine, Knight reached under the hood to lift it. His left hand came in contact with the whirling blades, resulting in the traumatic amputation of portions of three fingers.

Unable to agree on the terms of a settlement, the parties proceeded to trial. The jury returned a verdict in favor of the Knights and against Tape in the sum of $175,000. The jury also returned a verdict in favor of Tape and against General Mills on Tape's contribution/indemnity claim, holding General Mills liable for 50% of the $175,000 awarded to the Knights. Tape does not challenge either of the jury's verdicts on this appeal.

The Knights filed a post-trial motion to mold the verdict against Tape to include delay damages pursuant to Rule 238. Tape filed a response contesting the imposition of delay damages against it, and simultaneously filed its own motion seeking delay damages against General Mills or, alternatively, an apportionment of the Knights' delay damages between Tape and General Mills. Tape argued that, but for the Knights' unreasonable settlement demand and the pretrial delay resulting from the district court's backlog, the case would have settled or proceeded to trial earlier. At most, Tape contended, it should be held responsible for only the sixty-day delay resulting from its request for an extension of the discovery deadline.

Because Rule 238 does not require an inquiry into the reasonableness of plaintiff's settlement demand or the defendant's fault for pretrial delay, the district court awarded delay damages against Tape for the entire period between the filing of the complaint and the jury verdict, in the amount of $29,280.67. Additionally, the court denied Tape any relief against General Mills. Tape timely appealed from both portions of the district court's order.

On appeal, Tape contends that, as applied by the district court, Rule 238 arbitrarily and capriciously punished it for failure to settle and for pretrial delay, although it was at fault for neither, in violation of the due process and equal protection clauses of the Pennsylvania and United States Constitutions. The Knights respond that Rule 238 does not violate due process in that it rationally promotes the state's interest in fostering the settlement of meritorious tort claims by providing defendants with a financial incentive to make a reasonable and timely offer of settlement. The Knights further argue that, although Rule 238 treats plaintiffs and defendants differently, such classification does not offend equal protection because the two groups are not similarly situated and the classification drawn by the Rule is rationally related to the state's interest in fostering settlement.

Tape also argues on appeal that, assuming the award of delay damages to the Knights is constitutional, the district court erred in not requiring General Mills to pay half of the award. Tape notes that numerous state courts applying Rule 238 have held that delay damages must be apportioned among joint tortfeasors according to the jury's apportionment of liability on the underlying verdict. This sensible policy, Tape argues, was not applied by the district court in this case solely because of a technicality, i.e., under federal practice General Mills was a third-party defendant, not an additional defendant as it would have been under state practice, and thus was not *directly* liable to the Knights. Tape asks us to look beyond this form-over-substance distinction and to apportion delay damages as if the parties had been in state court. General Mills responds that, under the plain language of Rule 238, no party can be made to bear all or part of a delay damages award who was not directly liable to the plaintiff on the underlying tort action, and therefore the district court correctly refused to apportion the Knights' award.

## II. THE CONSTITUTIONALITY OF RULE 238

In order to place Tape's due process and equal protection challenges to the current version of Rule 238 in the context necessary for constitutional adjudication, it is necessary to first review the Rule's history, including the original version of the Rule and its judicial constructions.[2]

**2.** For an extended discussion of the history of Rule 238, *see generally Sherrill v. Port Authority* *of Allegheny County,* 383 Pa.Super. 104, 556 A.2d 450 (1989); Note, *The Continuing Debate Over*

## A. *The Original Rule and Laudenberger*

In 1978, the Pennsylvania Supreme Court promulgated the original version of Rule 238 pursuant to its authority to "prescribe general rules governing practice, procedure and the conduct of all courts ... if such rules ... neither abridge, enlarge nor modify the substantive rights of any litigant...." Pa. Const. art. V, § 10(c). The Rule required courts and arbitrators to award a successful tort plaintiff delay damages, which essentially constitute pre-judgment interest, in an amount equal to 10 percent per year of his or her compensatory award.[3] Damages were to be assessed for that period of time beginning on the later of the date the complaint was filed or one year after the cause of action accrued and ending on the date of the compensatory award. A defendant could avoid the assessment of delay damages only by making a written offer of settlement prior to trial, and keeping the offer open until the commencement of trial, in an amount equal to at least 80% of the plaintiff's ultimate jury award.

Within a year of its promulgation, the Rule was struck down by a Court of Common Pleas on the grounds that it: (1) affected the substantive rights of litigants and thus exceeded the Pennsylvania Supreme Court's limited authority under the Pennsylvania Constitution to promulgate procedural rules; and (2) violated the equal protection and due process clauses of the United States and Pennsylvania Constitutions. The Pennsylvania Supreme Court reversed, holding that the Rule was valid under both the state and federal constitutions. *See Laudenberger v. Port Authority of Allegheny County*, 496 Pa. 52, 436 A.2d 147 (1981).

In overturning the Court of Common Pleas' holding that it had exceeded its authority in promulgating the Rule, the Pennsylvania Supreme Court reasoned, based primarily on the unofficial explanatory notes accompanying the Rule, *see 8 Pa. Bulletin* 2668 (1978), that the "basic aim of the rule is to alleviate delay in the disposition of cases" by "prompting meaningful [settlement] negotiations," thereby "unclutter[ing] the courts." *Laudenberger* 496 Pa. at 59–60, 436 A.2d at 151. The Court thus concluded that the Rule was primarily procedural in nature and within its constitutional authority, indeed its exclusive responsibility, to provide for "the efficient and orderly administration of the courts." *Id.* at 61, 436 A.2d at 152. The Court admitted that the Rule "touch[es] upon [the] substantive rights of both parties" by requiring defendants, who fail to make a reasonable written offer, to compensate plaintiffs for the loss of the use of money damages during the pendency of a lawsuit. *Id.* at 66, 436 A.2d at 155. The Court noted, however, that "[m]ost rules of procedure will eventually reverberate to the substantive rights and duties of those in-

---

*Delay Damages: Pennsylvania's New Rule 238,* 35 Vill.L.Rev. 457 (1990).

**3.** The original version of Rule 238 in relevant part provided:

(a) Except as provided in subdivision (e), in an action seeking monetary relief for bodily injury, death or property damage, or any combination thereof, the court or the arbitrators ... shall

(1) add to the amount of compensatory damages in the award of the arbitrators, in the verdict of a jury, or in the court's decision in a nonjury trial, damages for delay at ten (10) percent per annum, not compounded, which shall become part of the award, verdict or decision;

(2) compute the damages for delay from the date the plaintiff filed the initial complaint in the action or from a date one year after the accrual of the cause of action, which-

ever is later, up to the date of the award, verdict or decision....

(c) Except as provided in subdivision (e), damages for delay shall be added to the award, verdict or decision against all defendants found liable, no matter when joined in the action....

(e) If a defendant at any time prior to trial makes a written offer of settlement in a specified sum with prompt cash payment to the plaintiff, and continues that offer in effect until commencement of trial, but the offer is not accepted and the plaintiff does not recover by award, verdict or decision, exclusive of damages for delay, more than 125 percent of the offer, the court or the arbitrators shall not award damages for delay for the period after the date the offer was made.

Pa. Cons.Stat.Ann.Rule 238 (Purdon 1987).

volved." *Id.* at 66–67, 436 A.2d at 155. The Court concluded, therefore, that it "should not be prevented from exercising its duty to resolve procedural questions merely because of a collateral effect on a substantive right."[4] *Id.* at 67, 436 A.2d at 155.

In overturning the Court of Common Pleas' holding that the Rule violated equal protection and due process, the *Laudenberger* Court noted that the equal protection clauses of the United States and Pennsylvania Constitutions functionally are equivalent and require that:

> "A classification 'must be reasonable, not arbitrary, and must rest upon some grounds of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.'"

*Id.* (citations omitted). The Court agreed with the Court of Common Pleas that under Rule 238 plaintiffs and defendants are not "treated alike," since only defendants are punished for delay in reaching trial and for failing to make a reasonable settlement offer. The Court reasoned, however, that such dissimilar treatment is not fatal for equal protection purposes because, in the context of pre-trial settlement negotiations, plaintiffs and defendants are not "similarly circumstanced." *Id.* at 68, 436 A.2d at 156.

> Rule 238 obviously creates distinctions between plaintiffs and defendants. The difference upon which the classification rests is that the plaintiffs have been wrongly injured and have suffered financial losses because of the defendants' action. The losses then become exacerbated by defendants' refusal to settle the lawsuit in a timely fashion. The defendants, on the other hand, have suffered no wrong. They, as the tortfeasors, are not unjustly deprived of compensation during the course of pre-trial delays. On the contrary, it is in the best interests of the defendants to protract the litigation

process as long as possible, so that they may benefit from the funds rightfully owing to the plaintiffs.

*Id.* at 68–69, 436 A.2d at 156. In rejecting the equal protection challenge to the Rule, the Court further stated that Rule 238's distinction between plaintiffs and defendants bore "a fair and substantial relation to its articulated goal" because the purpose of the Rule was to encourage *defendants* to settle meritorious claims promptly. *Id.* at 69, 436 A.2d at 156. Even in cases in which the plaintiff was partly or fully responsible for delays in reaching trial or for a failure to settle the claim, the Court added, imposition of delay damages on the defendant would bear "a fair and substantial relation" to the Rule's objective because it nonetheless would encourage "a defendant ... [to] protect himself from the assessment of pre-judgment interest by extending a reasonable settlement offer in a timely manner." *Id.* at 69–70, 436 A.2d at 156.

Consistent with its rejection of the equal protection challenge, the Court held that Rule 238 did not violate substantive due process. The Court was persuaded that the Rule was "rationally related to a legitimate state goal" (encouraging settlement and unclogging the courts) and thus did not "arbitrarily ... deny an individual of life, liberty, or property." *Id.* at 70, 436 A.2d at 157 (citing *Rogin v. Bensalem Township*, 616 F.2d 680 (3d Cir.1980), *cert. denied*, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981), and cases cited therein).

Justice Roberts' impassioned dissent in *Laudenberger* was but the first of many dissents in cases implicating Rule 238. The dissent refuted the majority's disposition of both the equal protection and due process challenges, stating:

> Apart from its impermissible intrusion into the legislative province, unconstitutionally creating substantive law by "procedural" rule, Rule 238 imposes arbi-

---

**4.** We note that, although Rule 238 has been characterized as "procedural" for purposes of the Pennsylvania Supreme Court's rulemaking authority, we repeatedly have held that the Rule is "substantive" for *Erie* purposes and thus must be applied by a federal court sitting in diversity.

*See Yohannon v. Keene Corp.*, 924 F.2d 1255, 1265 (3d Cir.1991); *Fauber v. Kem Transportation and Equipment Co., Inc.*, 876 F.2d 327, 328 (3d Cir.1989); *Rocco v. Johns–Manville Corp.*, 754 F.2d 110, 117 (3d Cir.1985); *Jarvis v. Johnson*, 668 F.2d 740, 746 (3d Cir.1982).

trary, unreasonable, and unequal burdens in the absence of tangible evidence that such measures will serve to accomplish the Rule's intended purpose of eliminating delay.

*Id.*, 496 Pa. at 77, 436 A.2d at 160 (Roberts, J., dissenting). Justice Roberts listed three aspects of Rule 238 that he considered particularly unfair and burdensome to tort defendants. First, he reasoned, by tying the imposition of delay damages solely to the difference between the settlement offer and the final award, the Rule failed to distinguish between defendants who refused to settle and those who made good-faith, reasonable efforts to settle but who nonetheless misjudged the worth of the claim. Second, he noted that in many cases delay damages begin to accrue on the day the plaintiff filed a complaint; thus, even defendants who ultimately make reasonable settlement offers prior to trial would have to pay delay damages for that period necessary to gather information and evaluate the merits of the plaintiff's claim. Third, Justice Roberts argued, the Rule would be fairer and more effective in promoting prompt settlement of claims if, in addition to punishing a defendant who failed to make a reasonable settlement offer, it punished a plaintiff who made an unreasonable settlement demand. *Id.* at 77–78, 436 A.2d at 160.

### B. *Craig*

As Justice Roberts' dissent in *Laudenberger* indicated, not all members of the Pennsylvania Supreme Court were satisfied with Rule 238. This dissatisfaction resurfaced in 1986, when the Court opted to reexamine *Laudenberger* in *Craig v. Magee Memorial Rehabilitation Center*, 512 Pa. 60, 515 A.2d 1350 (1986), a medical malpractice case that had been initiated in 1976, but which had not been brought to trial until 1983, due largely to delay caused by the plaintiff. On the authority of Rule 238 and *Laudenberger*, the Superior Court had affirmed the trial court's award of delay damages to the plaintiff. Defendants protested the imposition of delay damages, arguing, similarly to the defendants in *Laudenberger*, that the Pennsyl-

vania Supreme Court had exceeded its procedural rulemaking authority in promulgating Rule 238 and that the Rule violated equal protection and due process guarantees.

In a brief opinion, the Court noted that its promulgation of Rule 238 in 1978 had been "an experiment." *Id.*, 512 Pa. at 64, 515 A.2d at 1352. The Court went on to state that, contrary to its holding in *Laudenberger* and in light of the facts before it, it no longer could accept as constitutional the irrebutable presumption underlying Rule 238 that delay is always the fault of the defendant. The Court then announced, in a passage the equivocal flavor of which can be conveyed only by quotation in full, that it was suspending the operation of Rule 238.

> There is no point in contending that a procedural rule may exist that punishes without fault, and is yet consistent with Due Process. Neither is there point in arguing that a procedural rule that punishes a defendant *qua* defendant does not smack of a substantive enlargement of duties owed. We do not overrule the rationales of *Laudenberger*, for they have vitality of their own in the context of the ends sought. We today suspend the Rule because experience shows that the ends sought run too tight a gauntlet through Due Process, by denial of a forum to assess fault for the delay sought to be avoided. In short, Rule 238 has become an uncontestable presumption that all fault lies with a defendant. There are too many reasons why such is not always the case; and what is not always so may not be irrebuttable when a penalty follows.

*Id.* at 65, 515 A.2d at 1353.

In Rule 238's stead, the Court directed trial courts and arbitrators to resolve plaintiffs' requests for delay damages by conducting a hearing to resolve factual disputes when necessary and in accordance with the following general guidelines.

> In making a decision on a plaintiff's entitlement to delay damages the mere length of time between the starting date and the verdict is not to be the sole

criterion. The fact finder shall consider: the parties' respective responsibilities in requesting continuances; the parties' compliance with rules of discovery; the respective responsibilities for delay necessitated by the joinder of additional parties; and other pertinent factors. *Id.* at 66, 515 A.2d at 1353. The Court emphasized that its guidelines for assessing comparative fault for delay were to be effective only until it could promulgate a revised Rule 238, *see id.*, implicitly upholding the *Laudenberger* Court's determination that promulgation of the Rule did not exceed the Court's procedural rulemaking authority. *But see id.* at 66–67, 515 A.2d at 1354 (Hutchinson, J., concurring) (reiterating his "view that the rule addresses substantive issues which are outside [the Court's] rule-making jurisdiction.").[5]

### C. *The Current Rule 238*

On November 7, 1988, the Pennsylvania Supreme Court promulgated the current, revised version of Rule 238,[6] superseding *Craig.*[7] Consistent with *Craig*, new Rule 238 tempers old Rule 238's treatment of defendants in several important respects.

5. We have held, or more accurately we have predicted, that the Pennsylvania Supreme Court would hold that the Court's promulgation of new Rule 238 does not exceed its procedural rulemaking authority under the Pennsylvania Constitution. *See Yohannon v. Keene Corp.*, 924 F.2d 1255, 1269 (3d Cir.1991). Tape does not challenge this holding in this appeal.

6. The current version of Rule 238 in relevant part states:

(a)(1) At the request of the plaintiff in a civil action seeking monetary relief for bodily injury, death or property damage, damages for delay shall be added to the amount of compensatory damages awarded against each defendant or additional defendant found to be liable to the plaintiff in the verdict of a jury, in the decision of the court in a nonjury trial or in the award of arbitrators ... and shall become part of the verdict, decision or award. (2) Damages for delay shall be awarded for the period of time

(i) in an action commenced before August 1, 1989, from the date the plaintiff first filed a complaint or from a date one year after the accrual of the cause of action, whichever is later, up to the date of the award, verdict or decision; or

(ii) in an action commenced on or after August 1, 1989, from a date one year after the date original process was first served in the action up to the date of the award, verdict or decision.

(3) Damages for delay shall be calculated at the rate equal to the prime rate as listed in the first edition of the Wall Street Journal published for each calendar year for which the damages are awarded, plus one percent, not compounded.

(b) The period of time for which damages for delay shall be calculated under subdivision (a)(2) shall exclude the period of time, if any, (1) after which the defendant has made a written offer of

(i) settlement in a specified sum with prompt cash payment to the plaintiff, or

(ii) a structured settlement underwritten by a financially responsible entity, and continued that offer in effect for at least ninety days or until commencement of trial, whichever first occurs, which offer was not accepted and the plaintiff did not recover by award, verdict or decision, exclusive of damages for delay, more than 125 percent of either the specified sum or the actual cost of the structured settlement plus any cash payment to the plaintiff; or

(2) during which the plaintiff caused delay of the trial.

(c) Not later than ten days after the verdict or notice of the decision, the plaintiff may file a written motion requesting damages for delay and setting forth the computation.

(1) Within ten days after the motion is filed, the defendant may answer specifying the grounds for opposing the plaintiff's motion. The averments of the answer shall be deemed denied. If an issue of fact is raised, the court may, in its discretion, hold a hearing before entering an appropriate order....

Pa. Cons.Stat.Ann.Rule 238 (Purdon Supp.1990).

7. Those who oppose new Rule 238 as a retreat from the pro-defendant rhetoric of *Craig, see supra* at 623–24, have argued that the new Rule should be read "as supplementing *Craig* and not supplanting it." *Schrock v. Albert Einstein Medical Center*, 386 Pa.Super. 215, 229, 562 A.2d 875, 881 (1989) (*en banc*) (Popovich, J., dissenting), *aff'd,* —— Pa. ——, 589 A.2d 1103 (1991). This argument, however, is contrary to the explanatory comment to the new Rule and to *Craig* itself, both of which explicitly state that *Craig* was to apply only until a new Rule could be promulgated, *see* Rule 238, 42 Pa. Cons.Stat. Ann. explanatory comment at 23 (Purdon Supp. 1990); *Craig*, 512 Pa. at 66, 515 A.2d at 1353, and has been rejected by the Pennsylvania Superior Court, *see Ceresini v. Valley View Trailer Park*, 380 Pa.Super. 416, 418, 552 A.2d 258, 259 (1988) (*en banc*), *overruled on other grounds, Snelsire v. Moxon*, 384 Pa.Super. 85, 557 A.2d 785 (1989) (*en banc*), and one district court, *see Templin v. Hansford*, 737 F.Supp. 27, 29 (E.D. Pa.1990). We also reject this argument.

In obvious response to Justice Roberts' dissent in *Laudenberger, see supra* at 622–23, the new Rule provides that damages for delay will not begin to accrue, in actions commenced after August 1, 1989, until one year after the original service of process. *See* Rule 238(a)(2)(ii). This change serves to ensure that, regardless of when a plaintiff files his claim, the defendant will have a reasonable amount of time to "investigate and evaluate an action before the damages for delay begin to run." Rule 238, 42 Pa. Cons.Stat.Ann. explanatory comment at 24 (Purdon Supp.1990). New Rule 238 also provides a procedural mechanism by which a defendant can challenge a plaintiff's request for delay damages and, where appropriate, obtain a hearing to resolve disputed issues of fact. *See* Rule 238(c)(1). Further, new Rule 238 replaces the previous 10 percent annual interest rate with a floating rate tied to the prime rate as listed in the Wall Street Journal. *See* Rule 238(a)(3).

By far the most significant amendment to the Rule is the expansion of the grounds based on which a defendant can avoid delay damages altogether. New Rule 238 provides, as did the old Rule, that delay damages will be tolled if the defendant makes a written offer, refused by the plaintiff, of at least 80% of the jury's verdict. *See* Rule 238(b)(1). The new Rule additionally provides, however, that even if a defendant fails to make a sufficient written offer, delay damages will not be assessed for that period of time "during which the plaintiff caused delay of the trial." Rule 238(b)(2). The addition of subsection (b)(2) clearly is a product of the *Craig* Court's concern that due process is violated when delay damages are assessed without regard to the plaintiff's fault in causing the delay.

New Rule 238(b)(2) stops short in two important respects of what many considered to be the pro-defendant dictates of *Craig*. Not surprisingly, these two "shortcomings" are the very aspects of the new Rule challenged by Tape in this appeal as violative of due process and equal protection. First, although Rule 238(b)(2) shields a defendant from delay damages for that period during which the "plaintiff caused delay," a defendant, as under the old Rule, still is assessed damages for periods of delay not caused by either party, *see Schrock v. Albert Einstein Medical Center*, —— Pa. at ——, 589 A.2d at 1107; *Miller v. Wise Business Forms, Inc.*, 381 Pa.Super. 236, 240, 553 A.2d 443, 446 (1989) (*en banc*), including delays caused by a backlog in the court system, *see Modrick v. B.F. Goodrich Co.*, 383 Pa.Super. 498, 504, 557 A.2d 363, 366 (1989). Thus, to the extent that the new Rule permits a defendant to obtain a hearing to resolve issues of fact, it is only to determine whether any delay is attributable to the plaintiff. The hearing is not, as under *Craig*, intended to provide a forum to assess comparative fault for delay. *See Tindal v. Southeastern Pennsylvania Transportation Authority*, 385 Pa.Super. 94, 107, 560 A.2d 183, 189–90 (1989) (*en banc*) (Rowley, J., concurring).

Second, Rule 238(b)(2) limits the type of delay caused by a plaintiff for which a defendant may avoid delay damages to "delay of the trial"—a term that the explanatory comments suggest will be construed relatively narrowly.[8] Of particular importance to the instant dispute, it is clear that "delay of the trial" does not include any delay—or, ultimately, an outright failure to settle—caused by the plaintiff's unreasonable settlement behavior. *See Schrock,*

---

**8.** As the explanatory comment to new Rule 238 states:

With respect to delay of the trial, not every procedural delay is relevant to the issue of delay damages, but only such occurrences as actually cause delay of the trial. For example, failure by the plaintiff to answer interrogatories within thirty days should not affect the award of damages for delay unless the trial was delayed as a result. Otherwise, the intro-duction of the fault concept and its attendant hearing would create a large new field of court hearings revolving around evidence of dilatory compliance with discovery procedures, the evidence of which would consist almost entirely of the attorneys testifying against each other and could be years old before the hearing.

Rule 238, 42 Pa. Cons.Stat.Ann. explanatory comment at 24 (Purdon Supp.1990).

—— Pa. at —— n. 1, 589 A.2d at 1105 n. 1;[9] *Kukowski v. Kukowski*, 385 Pa.Super. 172, 181, 560 A.2d 222, 227 (1989); *Modrick*, 383 Pa.Super. at 506, 557 A.2d at 367. A plaintiff who makes an unreasonable demand or who otherwise hinders settlement negotiations may delay or altogether squelch the possibility of settling the case. Such behavior, however, will not delay the case from proceeding to trial. *See Schrock, supra* n. 9.

### D. *Pennsylvania Appellate Decisions Addressing Constitutional Challenges to New Rule 238*

The Pennsylvania Supreme Court has yet to address whether these alleged shortcomings render the New Rule constitutionally infirm.[10] And, although the Superior Court has rejected similar challenges and declared the Rule to be constitutional on three occasions, *see Shellhamer v. Grey*, 390 Pa.Super. 122, 129, 568 A.2d 224, 228 (1989); *Dietrich v. J.I. Case Co.*, 390 Pa.Super. 475, 489–91, 568 A.2d 1272, 1279–80 (1990); and *Dranzo v. Winterhalter*, 395 Pa.Super. 578, 595, 577 A.2d 1349, 1357 (1990), *appeal denied*, 526 Pa. 648, 585 A.2d 468 (1991), the conceptual foundations of these decisions have been unclear. Rather, they seem to reflect the Superior Court's reluctance to declare unconstitutional a rule promulgated by the Pennsylvania Supreme Court.

Those on the Superior Court opposed to new Rule 238, most notably President Judge Cirillo, have taken every opportunity, however, to register their dissent and argue strenuously that the new Rule is unfaithful to *Craig* and as unconstitutional as the old Rule. *See Dietrich*, 390 Pa.Super. at 491, 568 A.2d at 1280 (Cirillo, P.J.,

dissenting); *Schrock v. Albert Einstein Medical Center*, 386 Pa.Super. 215, 221, 562 A.2d 875, 877 (1989) (*en banc*) (Popovich, J., dissenting), *aff'd*, —— Pa. ——, 589 A.2d 1103; *Schrock*, 386 Pa.Super. at 230, 562 A.2d at 882 (Cirillo, P.J., dissenting); *Ceresini v. Valley View Trailer Park*, 380 Pa.Super. 416, 419, 552 A.2d 258, 260 (1988) (*en banc*) (*per curiam*) (Cirillo, P.J., dissenting), *overruled on other grounds*, *Snelsire v. Moxon*, 384 Pa.Super. 85, 557 A.2d 785 (1989) (*en banc*). The crux of these dissents is that new Rule 238 assesses delay damages against defendants without regard to their fault for failing to settle the case or for delaying the start of trial. As with its predecessor, they argue, the new Rule unconstitutionally "authoriz[es] the punishment of defendants *qua* defendants.... for the simple reason that they have chosen to defend their case." *Ceresini*, 380 Pa.Super. at 421, 552 A.2d at 260 (Cirillo, P.J., dissenting). If a plaintiff makes an unreasonable settlement demand, these dissents reason, he is at least equally at fault for failing to settle the case; thus, it is fundamentally unfair and unconstitutional to assess delay damages as if the defendant were solely at fault for failing to settle. *See Schrock*, 386 Pa.Super. at 234, 562 A.2d at 882–83 (Cirillo, P.J., dissenting).

Similarly, these dissents contend, defendants cannot be held at fault for that portion of pre-trial delay caused not by their own dilatoriness, but by the court's backlog of other matters. They would hold that to include such a period in the calculation of delay damages is unconstitutional. *Ceresini*, 380 Pa.Super. at 421, 552 A.2d at 260 (Cirillo, P.J., dissenting).

---

**9.** The Supreme Court of Pennsylvania has stated:

> We find no merit to appellant's argument that appellee was responsible for the delay of trial on the basis of his allegedly excessive and unreasonable settlement demands. The amount of a plaintiff's demand, no matter how excessive, is inconsequential to when trial dates are set. A plaintiff's excessive demands may slow the settlement process, but have little impact upon the speed of the litigation process. Thus, an assertion that the plaintiff's demand is unreasonable is simply

not relevant to the question of whether he or she was at fault for the delay of trial.
*Schrock*, —— Pa. at —— n. 1, 589 A.2d at 1105 n. 1.

**10.** Constitutional challenges were raised by the defendants in *Schrock*. In its recent opinion, the Pennsylvania Supreme Court held, however, that these challenges had been waived at an earlier stage in the litigation and thus declined to address them. *See Schrock*, —— Pa. at —— n. 1, 589 A.2d at 1105 n. 1.

At bottom, these dissents stand or fall on their judgment about the "fundamental unfairness" of punishing defendants who are not "at fault." However, these opinions do not define these concepts, nor explain their relation to the established requirements of due process and equal protection under federal constitutional law. We note in this respect that the Pennsylvania Supreme Court has indicated that it considers the due process and equal protection clauses of its constitution to be functionally equivalent to—or at least no more rigorous than—their federal counterparts. *See Laudenberger*, 496 Pa. at 67–71, 436 A.2d at 155–57. Thus, we feel confident in predicting that, whatever our interpretation of the relevant federal constitutional clauses, the Pennsylvania Supreme Court would construe its constitution consistently.

### E. *Does Rule 238 Satisfy Due Process and Equal Protection?*

■ Rule 238 falls squarely into that category of general economic and social welfare legislation the constitutionality of which is scrutinized, for substantive due process and equal protection purposes, under the minimum rationality standard. *See Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 83–84, 98 S.Ct. 2620, 2635–36, 57 L.Ed.2d 595 (1978). Tape does not contend, nor could it, that Rule 238 implicates a fundamental right or creates a suspect classification. Consequently, we are not required nor permitted to apply "heightened scrutiny." *See Lyng v. Castillo*, 477 U.S. 635, 638–39, 106 S.Ct. 2727, 2729, 91 L.Ed.2d 527 (1986). But the minimum rationality standard is an extremely difficult one for Tape to meet. As one leading treatise has noted:

Although the Supreme Court has never totally rejected a judicial role in the review of economic and social welfare legislation, it is rare that any law or classification would be held to violate substantive due process or equal protection principles under the rationality standard.

J. Nowak, R. Rotunda & J. Young, *Constitutional Law* 356 (3d ed. 1986).

■ This is not to suggest that substantive due process and equal protection can be collapsed into a single requirement. Although the two employ essentially the same standard of review in cases involving economic and social legislation, the focus of the two clauses does differ. Substantive due process looks to whether the law at issue bears any rational relationship to any interest that the state legitimately may promote.

The test for determining whether a law comports with substantive due process is whether the law is rationally related to a legitimate state interest. "[T]he law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it."

*Rogin v. Bensalem*, 616 F.2d 680, 689 (3d Cir.1980) (footnote omitted), *cert. denied*, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981). Equal protection, by contrast, focuses not on whether the law as a whole is rationally related to a legitimate state interest, but on whether any classifications drawn by the law between classes of citizens are rationally related to the goal to be achieved.

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.... The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.

*Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439–40, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985) (citations omitted).

■ As regards due process, it is undisputed that the Commonwealth has a legitimate interest in expediting the settlement of meritorious tort claims in order to reduce court congestion and delay. *See Laudenberger*, 496 Pa. at 70, 436 A.2d at 157.

It is also undisputed that new Rule 238 rationally promotes this goal by providing a financial incentive for defendants to settle or at least to make a reasonable offer of settlement. This would appear to be a sufficiently rational nexus to satisfy due process.

Tape would have us believe, however, that the Rule must do more to satisfy due process. As we noted above, Tape submits that the Rule is constitutionally infirm because it does not operate to eliminate or reduce a delay damage award when a plaintiff makes an unreasonable settlement demand or when all or part of the delay in reaching trial is caused by the court's backlog. With all respect, we fail to see how such proposed refinements to the Rule are necessitated by the due process clause.

More cases would doubtless settle if plaintiffs were also provided with an economic motivation to make reasonable settlement demands. Substantive due process does not require, however, that the Rule employ every means at its disposal to achieve its stated goal. *See Rogin*, 616 F.2d at 689. It is not for a court to say that a law violates substantive due process because it fails to go as far as it might or as far as the court thinks reasonable. Nor can Tape prevail on *substantive* due process grounds merely because, in its view, "unfairness" inheres in the scheme. We acknowledge the strong moral force of the arguments of Justice Roberts in his dissent in *Laudenberger* and President Judge Cirillo in his dissents, *see supra* at 626–27, but we have been cited to no cases that hold that a statute or rule that is "unfair," yet rational, offends substantive due process.

Rather under the settled jurisprudence it is enough that what the Rule does provide for be rationally related to achieving its stated result. In this respect, we fail to see how the Rule's failure to reduce damages when a plaintiff makes an unreasonable settlement demand can be said to work an arbitrary or irrational burden on a defendant. Simply put, the reasonableness of plaintiff's settlement demand ultimately has no bearing on whether or not delay damages are imposed on a defendant under Rule 238. In both its incarnations, the Rule has provided that a defendant may avoid the imposition of delay damages, despite a plaintiff's unreasonable refusal to settle, by tendering a written settlement offer of at least 80% of the jury's verdict. The imposition of delay damages ultimately turns then upon the defendant's ability to predict with reasonable accuracy the jury's verdict and his willingness to make a corresponding settlement offer, not upon the reasonableness of plaintiff's settlement demand. In short, Rule 238 does not punish a defendant because the parties failed to settle; the Rule punishes a defendant because the defendant failed to make a reasonable offer. As such, rationality does not require that the Rule adjust for the plaintiff's behavior.

Nor do we believe that Rule 238's failure to reduce damages for periods of delay "caused" by the court is irrational or arbitrary in due process terms. In Tape's view, unless the plaintiff or defendant specifically requests a discovery extension or in some other way directly delays the readiness of the dispute for trial, all delay in reaching trial should be classified as administrative delay, attributed to the court, and excluded in the calculation of delay damages under Rule 238.

We think this is a somewhat disingenuous characterization of the situation. In a sense, once the parties are prepared to go to trial, any delay resulting from the court's backlog cannot be "blamed" on the defendant. On a broader level, however, it is clear that some delay is inherent in the adjudication of disputes and that, but for the defendant's commission of a tort and refusal to tender a reasonable offer to settle, the plaintiff would not be made to bear this delay in receiving compensation. Thus, even if "unfairness" were the touchstone of due process analysis, in our view it would not be "unfair" to view administrative delay in reaching trial as being the "fault" of the defendant and to assess delay damages accordingly.[11]

11. In economic terms, the plaintiff, once injured, is deprived of his former health, and this

Once again, however, we do well to remember that rationality is the centerpiece of the due process requirement. It is certainly not irrational to think that, by imposing delay damages for periods of court-caused delay, the defendant will have an even greater incentive to tender a reasonable and timely offer—the ultimate object of the Rule. The point has been made forcefully by Judge Waldman:

> It is not unreasonable or arbitrary to hold a defendant accountable for the delay inherent in the system in which he forces a plaintiff to seek redress when that defendant resists a legitimate claim and thereby enjoys the use of funds during the period of litigation which should have been used to satisfy the claim.

*Templin v. Hansford,* 737 F.Supp. 27, 30 (E.D.Pa.1990).

As we have conceded above, a strong argument can be made that the Rule would be more effective in promoting its stated goal, or at least would be more balanced, if the penalty imposed upon a defendant for failing to make a reasonable settlement offer were reduced or eliminated when a court backlog contributed to the pretrial delay. But that is a matter for the rule drafters and the Pennsylvania Supreme Court, for, again, due process does not require that the Rule be tailored according to our sensibilities and policy preferences. It is enough that the Rule rationally furthers its stated purpose. At this, Rule 238 undeniably succeeds. The failure of Rule 238 to incorporate the two "shortcomings" suggested by Tape is not fatal for due process purposes.

■ This due process reasoning largely satisfies the dictates of equal protection as well. All that equal protection adds to the analysis is the requirement that the classification drawn between defendants and plaintiffs by Rule 238 be rationally related to the goal of the Rule, i.e., encouraging prompt settlement of meritorious claims. Stated differently, equal protection demands that plaintiffs and defendants be treated alike under Rule 238 unless there are differences between the two groups and such differences bear a reasonable relation to the object of the Rule.

As we have already suggested, such a rational ground for distinguishing in the treatment of plaintiffs and defendants under Rule 238 does exist. Indeed, the point is too obvious to belabor that tort plaintiffs and defendants are not similarly situated in the pretrial settlement context and that, in light of the Commonwealth's desire to foster settlement, it is not irrational for Rule 238 to distinguish between them. This reasoning was stated forcefully in *Laudenberger* a decade ago:

> Rule 238 obviously creates distinctions between plaintiffs and defendants. The difference upon which the classification rests is that the plaintiffs have been wrongly injured and have suffered financial losses because of the defendants' action. The losses then become exacerbated by defendants' refusal to settle the lawsuit in a timely fashion. The defendants, on the other hand, have suffered no wrong. They, as the tort-feasors, are not unjustly deprived of compensation during the course of pre-trial delays. On the contrary, it is in the best interests of the defendants to protract the litigation process as long as possible, so that they may benefit from the funds rightfully owing to the plaintiffs.

*Laudenberger,* 496 Pa. at 68–69, 436 A.2d at 156.

In short, tort plaintiffs and defendants face very different economic incentives, the upshot of which is that defendants are less interested, on the whole, in settling merito-

---

deprivation can be converted to monetary value. The defendant, in injuring the plaintiff, has "taken" his former health. In a perfect system, the plaintiff would be immediately compensated by the defendant, without delay. Unfortunately, our system is not perfect, and a defendant therefore benefits from the monetary value of his "taking" throughout the judicial process, until the case is concluded. Since money loses value over time, delay damages merely insure that a defendant is paying an accurate price for what he "took" from the plaintiff. It is not a question of fault, but instead a question of economics and the fluctuating value of money. *See generally,* R. Posner, *Economic Analysis of Law* (3rd ed. 1986) (discussing the underlying principles of "law and economics" theory).

rious claims promptly than are plaintiffs. Given this situation, we certainly cannot say that the Pennsylvania Supreme Court behaved irrationally when it promulgated Rule 238, thereby creating an additional financial incentive for defendants, but not for plaintiffs, to make reasonable settlement offers. Because Rule 238 satisfies, comfortably, the threshold requirements of substantive due process and equal protection, we hold that it is constitutional, and hence will affirm the district court's award of delay damages to the Knights.[12]

## III. APPORTIONING DELAY DAMAGES

■ Tape argued in the district court, and argues again on appeal, that, because the jury found General Mills liable for contribution for half of the Knights' $175,000 jury award, it should be required to bear half of the Knights' delay damages award as well. The district court rejected Tape's request, however, reasoning that Rule 238(a)(1) does not permit such a result. This subsection states:

> At the request of the plaintiff in a civil action seeking monetary relief for bodily injury, death or property damage, damages for delay shall be added to the amount of compensatory damages awarded against *each defendant or additional defendant found to be liable to the plaintiff* in the verdict of a jury ... and shall become part of the verdict....

(Emphasis added). The district court noted that General Mills, as a *third-party* defendant to the action brought by the Knights against Tape, technically was not directly

"liable to the [the Knights as] plaintiff[s]." In the district court's view, General Mills therefore did not fall within the category of defendants listed in subsection (a)(1) of the Rule and could not be made to bear a portion of the delay damages awarded against Tape.

The district court acknowledged that this result would have been different had the parties been in state court. Under Pennsylvania practice a third-party defendant is termed an "additional defendant" and is considered to be as directly liable to a plaintiff as if he originally had been named as a defendant. *See* Pa.R.Civ.P. 2255(d); *Campbell v. Meadow Gold Products Co.*, 52 F.R.D. 165, 168 (E.D.Pa.1971). Thus, a party joined as an additional defendant in a Pennsylvania court is required to bear a proportionate amount of the plaintiff's delay damages under Rule 238(a)(1). Because the federal rules contain no provision analogous to Rule 2255(d), Tape argued—and the district court agreed—that Tape effectively was punished for removing this dispute to federal court.

The district court determined, however, that Tape had an alternative basis, consistent with subsection (a)(1) of Rule 238, for seeking from General Mills a portion of the delay damages that Tape paid to the Knights. The court reasoned that Tape, as the plaintiff in the contribution action, was free to seek delay damages against General Mills in its posture as the defendant in the contribution action, based on the jury's verdict that General Mills was liable to contribute 50% of the Knights' verdict. In theory, this would have enabled Tape to

---

**12.** We note that this is not the first time that we have considered constitutional challenges to Rule 238. Indeed, we already have upheld *old* Rule 238 against due process and equal protection attacks. *See Insurance Federation of Pennsylvania, Inc. v. Supreme Court of Pennsylvania*, 669 F.2d 112 (3d Cir.1982) (*per curiam*). Because *new* Rule 238 is in all respects more favorable to defendants than the old Rule (notwithstanding that the new Rule perhaps falls short of *Craig*), an argument could be made that the instant dispute could have been disposed of without extended discussion on the authority of *Insurance Federation.* However, the sum total of *Insurance Federation's* analysis of the constitutionality of old Rule 238 is con-

tained in a single paragraph, which merely makes reference to *Laudenberger* and cites as "persuasive" a New Jersey decision, *Busik v. Levin*, 63 N.J. 351, 307 A.2d 571, *appeal dismissed for want of a substantial federal question*, 414 U.S. 1106, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973), which had upheld the New Jersey Supreme Court's prejudgment interest rule, although essentially only against a separation of powers, not fourteenth amendment, challenge. In light of this cursory analysis, and the dramatic judicial and legislative developments involving Rule 238 since 1982, we thought it better to consider the constitutional challenges raised here anew instead of relying on *Insurance Federation.*

recover half of the delay damages that it paid to the Knights, creating the same result that would have obtained had the district court apportioned the Knights' delay damages award directly.

In practice, however, this approach proved useless to Tape. Because Tape's action was commenced before August 1, 1989, under new Rule 238(a)(2)(i) Tape is entitled to delay damages for the period *beginning* on the date that it filed a complaint or one year after the accrual of its cause of action against General Mills, whichever is later, and *ending* on the date of the jury's verdict. Because Tape's cause of action against General Mills for contribution is not deemed to have accrued until judgment was entered in the Knights' action, *see Sea–Land Service, Inc. v. United States*, 874 F.2d 169, 171 (3d Cir.1989), in this case on February 8, 1990, the period for which Tape is eligible for delay damages did not begin until February 8, 1991. This period ended, however, on the date of the jury's verdict against General Mills, February 7, 1990. In other words, under Rule 238(a)(2)(i) the period for which Tape was eligible to receive delay damages from General Mills quite literally ended before it began. Consequently, the district court concluded that Tape was not entitled to any delay damages from General Mills.

Tape argues that the district court's result is absurd and is contrary to the spirit of several cases that have held that each defendant should be liable for delay damages only on its pro rata share of the verdict. *See Hughes v. GAF Corp.*, 364 Pa.Super. 311, 317–18, 528 A.2d 173, 176–77 (1987), *appeal denied*, 517 Pa. 623, 538 A.2d 876 (1988); *Korn v. Consolidated Rail Corp.*, 355 Pa.Super. 170, 174–75, 512 A.2d 1266, 1268–69 (1986); *Baciotti v. Simmons*, 346 Pa.Super. 23, 29–30, 498 A.2d 1351, 1354 (1985); *Rocco v. Johns–Manville Corp.*, 754 F.2d 110, 117–18 (3d Cir. 1985). Tape submits that the district court's approach perpetuates a technical distinction between additional defendants under state practice and third-party defendants under federal practice, even though this distinction is irrelevant in the context of Rule 238. Tape essentially requests that we find some way to circumvent what it views as a senseless result.

We agree that the district court's approach, although technically correct, results in a disparate and forum-dependent application of Rule 238 that ignores the realities of the settlement process and, most importantly, frustrates the policies undergirding Rule 238. To understand why this is so, it is useful to consider how Rule 238 would have influenced Tape's and General Mills' settlement behavior had the latter been joined as an additional defendant in state court, instead of as a third-party defendant in federal court.

As noted, the Knights' total verdict was $175,000, with Tape and General Mills effectively liable for half of the verdict, or $87,500, each. If General Mills had been an additional defendant, either it or Tape could have avoided delay damages under Rule 238 by *individually* tendering written settlement offers of at least $70,000 (80% of $87,500) to the Knights, regardless of the adequacy of any offer tendered by the other. In short, the two defendants would have had equal and independent incentives to tender an offer at least 80% of their ultimate individual liability to the Knights. The district court's application of Rule 238, which turns on General Mills' status as a third-party defendant under the federal practice, alters the parties' respective settlement incentives dramatically. In order to avoid delay damages under the district court's approach, Tape must tender a written settlement offer of at least $140,000 (80% of $175,000) to the Knights. However, because delay damages will not begin to run against General Mills until one year after the Knights' verdict against Tape is rendered, Rule 238 provides General Mills with no incentive to tender a reasonable settlement offer to Tape on its contribution claim. In essence, Tape must bear the entire burden and risk of estimating the jury's ultimate award and must make a corresponding offer to the Knights, while General Mills is immunized from Rule 238,

regardless of the reasonableness or timeliness of its settlement offer.

The question we must consider is whether there is a sound reason to believe that the Pennsylvania Supreme Court intended for the operation of Rule 238, with respect to parties such as General Mills, to depend on the fortuity of whether an action proceeds in state or in federal court. Stated differently, are the differences between additional defendants under state practice and third-party defendants under federal practice sufficiently meaningful in the context of Rule 238 to justify such disparate treatment? For the reasons discussed below, and in light of our repeated holdings that Rule 238 is to be considered substantive for *Erie* purposes, *see supra* note 4, we think not.

Although an additional defendant technically is directly liable to the original plaintiff, whereas a third-party defendant technically is liable to the original defendant, this difference does not seem to us to alter materially the fundamental dynamic of either the settlement process or the parties' prospects for achieving a settlement. In either case, the realities of the bargaining, if not the legal niceties, are virtually identical. The plaintiff seeks compensation for injuries. The two defendants seek to minimize both the total damages paid and, to an even greater degree, their respective shares of the liability. Whether the case settles, and for how much, ultimately will turn more on the parties' relative bargaining capacities and legal responsibilities for the tort than on technical distinctions over who is directly liable to whom.

Even if the tenor of the negotiations or the prospects for settling the dispute did vary marginally depending on whether one of the parties was classified as a third-party defendant rather than an additional defendant, we still fail to see how this would affect the application of Rule 238. As stated previously, *see supra* at 628, Rule 238

does not punish a defendant for failing to settle. Delay damages are assessed only if a defendant fails to make a settlement *offer* of at least 80% of his ultimate liability to the "plaintiff." A defendant's ability to avoid delay damages thus is not dependent on the behavior of the other parties; only the defendant's capacity to predict the jury's apportionment of liability and willingness to make a corresponding offer is relevant. Given that the jury's apportionment of liability is not likely to be affected by the technical status of a defendant, it should be of no import to a particular defendant whether the "plaintiff" to whom he must extend the offer is the original plaintiff or the original defendant turned plaintiff in a contribution action.[13] In either case, the required amount of the defendant's offer, if he wishes to avoid delay damages, is the same.

In short, we can discern no reason why the Pennsylvania Supreme Court would have intended effectively to shield third-party defendants in actions litigated in federal court from the burdens of Rule 238, while providing that the same parties, classified as additional defendants under the state practice, should bear its full brunt. Any technical distinctions between the two types of defendants simply are not relevant to the purpose or operation of Rule 238. Thus, we must assume that the result that the district court felt compelled to reach in the instant matter reflects an unintended conflict between the language of Rule 238 and its operation under federal practice. We therefore believe that, in light of its failure to tender a reasonable written offer either to the Knights or Tape, General Mills should be required to bear a portion of the delay damages assessed. This is best effectuated, we believe, not by directly apportioning the Knights' delay damages award among Tape and General Mills, but rather by adding an appropriate amount of delay damages onto Tape's judgment as plaintiff in the contribution action. Gener-

---

**13.** We note that here Tape and General Mills made a joint oral offer of settlement to the Knights. *See supra* at 620.

ally consistent with Rule 238(a)(2)(i), *see supra* note 6, the amount of damages is to be calculated for the period beginning with the date that Tape filed its complaint impleading General Mills until the date that judgment was entered in the contribution action.[14]

## IV. CONCLUSION

For the foregoing reasons, we hold that Rule 238 is not constitutionally infirm, and we thus will affirm the district court's award of delay damages against Tape. We also hold, however, that the judgment for contribution against third-party defendant General Mills should be modified to reflect its proportionate share of the delay damages awarded against Tape. We therefore will reverse the judgment of the district court and remand so that an appropriate order may be entered. The parties will bear their own costs.

---

**14.** We recognize that this approach to calculating delay damages against third-party defendants such as General Mills has the effect of eliminating, for actions commenced before August 1, 1989, one prong of Rule 238(a)(2)(i)'s requirement that damages be calculated from the later of the date the complaint was filed *or the date one year after the cause of action accrued.* This result is necessitated, however, by the foregoing analysis. Indeed, as we have previously discussed, because a cause of action for indemnity does not accrue until judgment is entered in the underlying action, *see Sea–Land Service,* 874 F.2d at 171, unless the "cause of action" prong is eliminated the Rule effectively prevents an award of delay damages against even the most unreasonable third-party defendant. This alteration in the technical application of Rule 238(a)(2)(i) thus is necessary to further the Rule's underlying purpose to provide third-party defendants with a genuine incentive to make reasonable settlement offers. We add that the modification to Rule 238(a)(2)(i) imposed here will be applicable only in a very narrow range of cases. Under subsection

(a)(2)(ii) of Rule 238, which is to be applied to actions commenced on or after August 1, 1989, the date that a cause of action accrued is not relevant to the calculation of delay damages. This subsection requires instead that delay damages be calculated beginning one year after the date original process was served in the action, and thus will not require modification in its application to third-party defendants. In essence then, our holding here merely accelerates the application of subsection (a)(2)(ii) for that subcategory of cases commenced before August 1, 1989, in federal court, involving third-party defendants. We recognize that if a plaintiff files a complaint shortly after his cause of action accrues, and the defendant promptly impleads the third-party defendant, our modification to Rule 238(a)(2)(i) will result in delay damages beginning to accrue against a third-party defendant before they have begun to accrue against the original defendant. Such a result, of course, would be inequitable. In such cases, delay damages against the third-party defendant therefore should be calculated beginning on the same day as for the original defendant.