**Alma M. SEALOVER, individually, and in her capacity as Administratrix of the Estate of Donald Sealover, deceased, Plaintiffs,**

v.

**CAREY CANADA, et al., Defendants.**

**No. 1:CV–88–0643.**

United States District Court, M.D. Pennsylvania.

May 7, 1992.

---

John McN. Broaddus, Deborah K. Hines, Shepard A. Hoffman, Connerton, Ray & Simon, Washington, D.C., for plaintiffs.

Robert B. Lawler, Beth Evans Valocchi, Wilbraham & Coleman, Philadelphia, Pa., for U.S. Gypsum Co.

James P. Gannon, Barnard and Gannon, Media, Pa., for W.R. Grace & Co.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND

Plaintiffs Alma M. Sealover and Donald E. Sealover filed this products liability action on April 29, 1988 against defendants W.R. Grace Company, ("W.R. Grace"), United States Gypsum Company ("US Gypsum"), GAF Corporation, National Gypsum Company ("National Gypsum"), Owens–Corning Fiberglas ("OCF"), and Johns–Manville Corporation ("Manville Trust").[1] Subsequent to Donald Sealover's death on May 2, 1988, Alma Sealover, acting both individually and as administratrix of her husband's estate, filed an amended complaint alleging that as a result of Donald Sealover's exposure to asbestos during his sojourn in the Merchant Marines and during his forty-year career as a carpenter, he contracted mesothelioma,[2] asbestosis and other asbestos-related diseases which ultimately led to his death.

The trial was bifurcated with the first phase on strict liability only.[3] The first phase of the trial concluded with the jury awarding compensatory damages of $400,-000 to the estate and $210,000 to Alma Sealover, individually. Both verdicts were returned against all four non-settling defendants as well as the Manville Trust and OCF.[4] Plaintiffs contend that liability is joint and several and seek delay damages against all six. Defendants contest plaintiffs' calculation of delay damages and dis-

claims. Although plaintiffs' negligence claim has not been tried, nothing would be gained if that claim were tried. The jury's award of compensatory damages on plaintiffs' strict liability claim recompensed the estate and Sealover for all compensable harm proximately caused by defendants' conduct.

---

1. U.S. Gypsum, GAF Corporation and National Gypsum are part of a group of defendants, affiliated for purposes of defending actions such as this, which are known as the Center for Claims Resolution Defendants or "CCR Defendants."

2. Mesothelioma is a terminal cancer of the lining of the lung.

3. In an order and memorandum dated April 3, 1992, the court granted summary judgment in defendants' favor on plaintiffs' punitive damage

4. Plaintiffs settled with Owens–Corning Fiberglas prior to trial for the sum of $95,000.00, given in exchange for a *pro rata* release.

agree with their contention that liability is joint and several. Defendants assert that the court should mold the verdict to reflect liability on the part of each non-settling defendant for its *pro rata* share of the verdict only. Under their argument, plaintiffs could collect no more than one-sixth of the total judgment (or $101,667.00 plus delay damages assessed on that amount only), from each defendant.

Before the court are: (1) plaintiffs' motion (Record Document No. 220, filed July 22, 1991) for delay damages pursuant to Pennsylvania Rule of Civil Procedure 238; (2) plaintiffs' motion (Record Document No. 221, filed July 22, 1991) for entry of judgment and severance of plaintiffs' case against National Gypsum; (3) plaintiffs' motion (Record Document No. 232, filed September 11, 1991) for entry of judgment and severance of plaintiffs' case against GAF Corporation; (4) the CCR Defendants' motion (Record Document No. 242, filed December 5, 1991) to treat Johns–Manville as a settled defendant and mold the verdict accordingly; and (5) W.R. Grace's motion (Record Document No. 244, filed December 11, 1991) to mold the verdict and deduct the shares of the settling defendants.

## DISCUSSION

*Plaintiffs' motions to sever the case against GAF Corporation and National Gypsum and enter judgment against those defendants*

Plaintiffs' motions for entry of judgment and severance of the case against GAF Corporation and National Gypsum were rendered moot by our order and memorandum disallowing plaintiffs' claim for punitive damages against defendants W.R. Grace and U.S. Gypsum. The basis for plaintiffs' motions was their decision to pursue claims for punitive damages against

defendants W.R. Grace and U.S. Gypsum, and that basis no longer exists since the court has granted summary judgment in defendants' favor on those claims.

*Joint and several liability*

■ Defendants seek entry of a judgment apportioning liability among them *pro rata*. They argue that liability among them is not joint and several. As the parties seeking apportionment, defendants bear the burden of proving that it applies. *Martin v. Owens–Corning Fiberglas*, 515 Pa. 377, 528 A.2d 947 (1987).

■ Under Pennsylvania law,[5] apportionment is appropriate only if the injured party suffers distinct harms or if the court is able to "identify 'a reasonable basis for determining the contribution of each cause to a single harm.'" *Martin, supra*, 528 A.2d at 949, quoting *Restatement (Second) of Torts*, § 433A(1) (1965).[6] Accord: *Glomb v. Glomb*, 366 Pa.Super. 206, 530 A.2d 1362, 1365 (1987), *alloc. denied*, 517 Pa. 623, 538 A.2d 876 (1988). On the other hand, liability is joint and several if the actors' conduct caused "a single harm which cannot be apportioned ... even though [the actors] may have acted independently." *Rabatin v. Columbus Lines, Inc.*, 790 F.2d 22, 24 (3d Cir.1986), quoting *Capone v. Donovan*, 332 Pa.Super. 185, 189, 480 A.2d 1249, 1251 (1984).

Determining which applies depends on the particular facts of the case. In *Voyles v. Corwin*, 295 Pa.Super. 126, 441 A.2d 381 (1982), the Pennsylvania Superior Court identified seven factors which, although not a "talismanic" test, may assist the court in making this determination. *Glomb, supra*, 530 A.2d at 1365. The seven are:

(1) the identity of a cause of action against each of two or more defendants;

 (a) there are distinct harms, or
 (b) there is a reasonable basis for determining the contribution of each cause to a single harm.
(2) Damages for any other harm cannot be apportioned among two or more causes.
Adopted by the Pennsylvania Supreme Court in *Martin, supra*, 528 A.2d at 949.

---

**5.** All parties agree that Pennsylvania law applies under *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and its progeny.

**6.** *Restatement (Second) of Torts*, § 433A provides:

 § 433 A. Apportionment of Harm to Causes.
 (1) Damages for harm are to be apportioned among two or more causes where

(2) the existence of a common, or like duty;

(3) whether the same evidence will support an action against each;

(4) the single, indivisible nature of the injury to the plaintiffs;

(5) identity of the facts as to time, place or result;

(6) whether the injury is direct and immediate, rather than consequential[;]

(7) responsibility of the defendants for the same *injuria* as distinguished from *damnum*.

*Voyles, supra,* 441 A.2d at 383, quoting Prosser, *Law of Torts* § 46 n. 2 (4th ed. 1971) (footnotes omitted).

Here, liability among the defendants is unquestionably joint and several. Their conduct combined to cause a single, indivisible harm, Donald Sealover's mesothelioma and, ultimately, his death. As the commentary to *Restatement (Second) of Torts,* § 433 A, aptly notes:

Certain kinds of harm, by their very nature, are normally incapable of any logical, reasonable, or practical division. Death is that kind of harm, since it is impossible, except upon a purely arbitrary basis for the purpose of accomplishing the result, to say that one man has caused half of it and another the rest.... Where two or more causes combine to produce such a single result, incapable of division on any logical or reasonable basis, and each is a substantial factor in bringing about the harm, the courts have refused to make an arbitrary apportionment for its own sake, and each of the causes is charged with responsibility for the entire harm.

*Restatement (Second) of Torts,* § 433 A, comment (i) to subsection (2).

There is no way of determining which defendant's products caused Donald Sealover's mesothelioma. Mesothelioma is not quantity specific and can be caused by even relatively minimal exposure to asbestos. Thus, even if Sealover's exposure to any one defendant's product was relatively min-

imal, that product could, nonetheless have been the causative agent. Apportioning plaintiffs' harm into divisible segments would be an impossible task, since there is no basis for assigning individual responsibility. See: *Glomb, supra,* 530 A.2d at 1367 and *Martin, supra,* 528 A.2d at 950 (Regarding plaintiff's conditions of emphysema caused by plaintiff's cigarette smoking, and asbestosis, caused by his exposure to asbestos, the court stated: "The causes of disability in this case do not lend themselves to separation by lay-persons on any reasonable basis.") Cf. *Voyles, supra,* (Liability could be apportioned because the conduct of one party added to or aggravated an injury caused previously by another party.).

Additionally, each defendant breached the same duty owed to Donald Sealover: a duty to warn of the hazards of asbestos. Each defendant had an equal opportunity to prevent or lessen the impact of Sealover's asbestos exposure by warning him of the inherent danger of serious lung disease. See: *Rabatin, supra,* 790 F.2d at 26.

Although defendants argue that it has been the practice of the Pennsylvania and federal courts to treat asbestos cases differently than other cases involving joint tortfeasors, we are not convinced that the cases they cite stand for the proposition they advance.[7] For example, defendants cite *Walton v. Avco,* 383 Pa.Super. 518, 557 A.2d 372, 386, *alloc. granted,* 524 Pa. 594, 568 A.2d 1245 (1989), in support of their argument, but *Walton* addressed an altogether different issue, the right of contribution among defendants held jointly and severally liable. Defendants have not advanced any convincing reasons for treating asbestos manufacturers differently than other joint tortfeasors, and we know of none.

Finally, even if we agreed with defendants' contention that apportionment is appropriate, the issue should have been raised before the case was submitted to the jury. The determination of relative fault

---

7. Defendants cite: *Rocco v. Johns–Manville Corp.,* 754 F.2d 110 (3d Cir.1985); *Hulmes v. Johns–Manville Corp.,* 408 Pa.Super. 656, 588 A.2d 568, (1990) and *Lilley v. Johns–Manville Corp.,* 408 Pa.Super. 83, 596 A.2d 203, 206 (1991).

among defendants is an issue of fact for the jury to decide. *Corbett v. Weisband*, 380 Pa.Super. 292, 551 A.2d 1059, 1079 (1988), *appeal denied*, 524 Pa. 607, 569 A.2d 1367 (1989); *Glomb, supra*, 530 A.2d at 1367 and *Martin, supra*, 528 A.2d at 948.

Based on these considerations, we find that all non-settling defendants are jointly and severally liable for the verdict, and judgment will be entered to that effect. Defendants have, of course, the right to contribution among themselves under the Uniform Contribution Among Tort-feasors Act, 42 Pa.C.S.A. §§ 8321–8327 (Purdon 1991), if any one defendant pays more than its share of the judgment. See: *Wirth v. Miller*, 398 Pa.Super. 244, 580 A.2d 1154, 1156 (1990). Allocation of responsibility among them is a separate matter to be decided, if raised, in a subsequent action for contribution. *Rabatin, supra*, 790 F.2d at 24 and 42 Pa.C.S.A. § 8324(a) and (b).

### Settling defendant

Plaintiffs settled with Owens–Corning Fiberglas prior to trial for the sum of $95,-000.00 in exchange for a *pro rata* release. The parties disagree as to whether the verdict should be reduced by the sum OCF paid in settlement, $95,000.00, or by one-sixth of the verdict, $101,666.67. Based on plaintiffs' characterization of the release as a *pro rata* release providing for reduction of the verdict by the *lesser* of the amounts plaintiffs received in settlement *or* OCF's *pro rata* share of the verdict, we find that adherence to the settlement terms is appropriate. We make this finding based on the understanding, pursuant to plaintiffs' representations, that OCF assumed the risk that the non-settling defendants may seek contribution from it for the difference between the amount of settlement and its *pro rata* share of the verdict.

### Manville Trust

Defendants argue that Manville should be treated as a settled defendant, the same as OCF, and that they should not be required to pay any portion of the verdict entered against Manville or to pay delay damages accrued on its share of the verdict. We agree. Manville will be treated as a settling defendant, and plaintiffs will be required to submit a claim to the Manville Trust for payment of its share.[8] Manville's *pro rata* share of the verdict will be deducted prior to entry of judgment. In *Findley v. Blinken*, 129 B.R. 710, (E.D.N.Y.1991), Judge Weinstein determined that the Trust could be expected to pay, on average, fifteen percent of the total liability for a particular injury.

 Having determined that Manville should be treated as a settled defendant, the question remains as to how to mold the verdict to reflect that status. Defendants urge the court to deduct fifteen percent of the total verdict as Manville's *pro rata* share, based on Judge Weinstein's determination in *Findley, supra*, that, on average, Manville ultimately pays fifteen percent of the total verdict in a claim of this type.[9] There is no rational basis for applying Weinstein's projection to the facts of this case, or for applying any formula different from the formula applied in molding the verdict to reflect plaintiffs' settlement with OCF. To do otherwise would be inconsistent. Therefore, we calculate Manville's percentage of the verdict as a straight *pro rata* percentage, without regard to the actual amount plaintiffs are likely to recover from the Trust, meaning that we will deduct one-sixth of the verdict to reflect its status as a settling defendant.[10]

---

**8.** Pursuant to order of Judge Weinstein, all claims are processed through the Trust's administration procedures. Claims are paid based upon a scale which establishes maximum and average recoveries. See: *Joint Eastern and Southern Districts Asbestos Litigation*, Index No. 4,000, slip op., 1991 WL 86304 (E.D.N.Y. and S.D.N.Y. May 16, 1991) and *Findley v. Blinken*, 129 B.R. 710 (E.D.N.Y.1991).

**9.** In this case, fifteen percent of the total verdict is $91,500.00 (15% × $610,000.00). Although

our determination results in the anomaly of giving the non-settling defendants a greater deduction from the verdict than they sought, we are convinced that adhering to the traditional formula is the better result.

**10.** Although the formula applied is the same, the calculations for deducting OCF's share differed. In that instance, the verdict was molded by deducting the amount plaintiff actually received in settlement from OCF, because the terms of

### Molded verdict

■ The only issue which remains is the calculation of delay damages. Amounts recovered or recoverable from settling defendants are deducted prior to the calculation of delay damages. *Wirth, supra,* 580 A.2d at 1159. The verdict entered against the CCR defendants and W.R. Grace is reducible by the settlement received from OCF ($95,000.00) and the Manville Trust's one-sixth share of the verdict ($101,666.67), reducing the total judgment to be entered against the remaining defendants to $413,-333.33, plus delay damages.

### Rule 238 delay damages

■ Pennsylvania Rule of Civil Procedure 238[11] permits the award of delay damages in tort actions on a claim for "bodily injury, death or property damage" or for loss of consortium. Pa.R.C.P. 238; *Gross v. Johns–Manville Corp.,* 410 Pa.Super. 486, 600 A.2d 558, 567 (1991) and *Rogers v. Johnson & Johnson,* 401 Pa.Super. 430, 585 A.2d 1004, 1008 (1990). Rule 238 is substantive law for purposes of *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and must, there-fore, be followed by federal courts sitting in diversity. *Knight v. Tape, Inc.,* 935 F.2d 617, 622 n. 4 (3d Cir.1991) and *Yohannon v. Keene Corp.,* 924 F.2d 1255, 1265 (3d Cir.1991).[12]

■ Rule 238 entitles a prevailing plaintiff to delay damages if the verdict rendered was more than 125% of any written settlement offer extended by the defendant in compliance with the Rule.[13] Such damages are in the nature of prejudgment interest, *Snelsire v. Moxon,* 384 Pa.Super. 85, 557 A.2d 785, 787 (1989) (en banc), and are awardable even if the defendant did nothing to delay trial, if trial was delayed due to a crowded court docket, or due to other factors which were not the fault of plaintiff or of any party.[14] *Knight, supra,* 935 F.2d at 625; *Rosen v. Rucker,* 905 F.2d 702, 707 (3d Cir.1990) ("[E]ven if the defendant is not at fault for any delay, it must pay delay damages if it fails 'to meet the initial requirement of a bonafide [sic] offer of settlement, which would have served to insulate [it] from delay damages.'") and *Schrock v. Albert Einstein Medical Center,* 527 Pa. 191, 589 A.2d 1103 (1991).

---

plaintiff's settlement agreement superseded the formulaic rule.

11. This action is governed by New Rule 238 promulgated by the Pennsylvania Supreme Court on November 7, 1988. Subsection (f) of the new rule provides that it applies to all actions "pending on or after the effective date of the rule in which damages for delay have not been determined." The federal courts have followed this direction. *Fauber v. Kem Transportation and Equipment Co., Inc.,* 876 F.2d 327, 328 (3d Cir.1989).

12. In *Knight, supra,* 935 F.2d at 622 n. 4, the Third Circuit stated:

... [A]lthough Rule 238 has been characterized as 'procedural' for purposes of the Pennsylvania Supreme Court's rulemaking authority, we repeatedly have held that the Rule is 'substantive' for *Erie* purposes and thus must be applied by a federal court sitting in diversity.

13. Rule 238 provides in relevant part:

(a)(1) At the request of the plaintiff in a civil action seeking monetary relief for bodily injury, death, or property damage, damages for delay shall be added to the amount of compensatory damages awarded against each defendant or additional defendant found to be liable to the plaintiff in the verdict of a jury ... and shall become part of the verdict, decision or award.

(b) The period of time for which damages for delay shall be calculated under subdivisions (a)(2) shall exclude the period of time, if any,

(1) after which the defendant has made a written offer of

(i) settlement in a specified sum with prompt cash payment of the plaintiff, or

(ii) a structured settlement underwritten by a financially responsible entity,

and continued that offer in effect for at least ninety days or until the commencement of trial, whichever first occurs, which offer was not accepted and the plaintiff did not recover by award, verdict or decision, exclusive of damages for delay, more than 125 percent of either the specified sum or the actual cost of the structured settlement plus any cash payment to the plaintiff; or

(2) during which the plaintiff caused delay of the trial.

14. This interpretation fosters the dual purposes of Rule 238: to alleviate delays in the court system and to encourage tortfeasors to settle meritorious claims expeditiously. Pa.R.C.P. 238, Explanatory Comment.

■ Such damages are awardable for the period dating from the date the complaint was filed or from a date one year after the cause of action accrued, whichever is later, up to the date of the verdict, July 12, 1991 ("calculation period").[15] Certain periods are excludable. The plaintiffs are not entitled to delay damages for any period of time during which: (1) there was an outstanding settlement offer made in compliance with the Rule; or (2) the plaintiff was responsible for delaying trial. Only procedural delays which defer the start of trial are relevant.[16] *Knight, supra,* 935 F.2d at 625. Defendant bears the burden of proving that these exclusions apply. *Rosen, supra,* 905 F.2d at 707 and Pa.R.C.P. 238, Explanatory Comment.

### Sealover's claim for delay damages

Sealover seeks delay damages for the entire pendency of the case, from the date of filing, April 29, 1988, through the date a verdict was rendered. Defendants do not contend that a settlement offer was made in compliance with the Rule, but do argue that several periods should be excluded from the calculation period because plaintiffs and other defendants were responsible for delaying the start of trial.

Defendants argue that the following periods should be excluded:

1. March 30, 1990 to June, 1990—Defendant Owens–Corning Fiberglass ("OCF") was granted a continuance so that it could reopen discovery to depose a coworker of Donald Sealover, Ralph Boose, who had knowledge of the asbestos materials to which Sealover had been exposed. OCF based its motion on a contention that plaintiffs did not reveal the existence of Mr. Boose, or his knowledge relevant to product-identification issues, until after OCF filed a motion for summary judgment.

OCF's motion was opposed by plaintiffs, who contended that Mr. Boose was named in response to interrogatories filed before the close of discovery. In an order dated April 11, 1990, Judge Rambo granted OCF's motion, and the trial was continued from the May, 1990 trial list (the original trial list) to the June, 1990 trial list.

2. April 1990 through July 1991—Defendants base this claim on the fact that trial was continued several times at plaintiffs' request, and for other reasons, during this period. In a motion filed April 16, 1990, plaintiffs requested a continuance from the June, 1990 trial list to the September, 1990 trial list so that she could conduct additional discovery. In an order dated April 18, 1990, Judge Sylvia Rambo granted plaintiffs' motion, and placed the action on the October, 1990 trial list. On August 20, 1990, plaintiffs requested a continuance from October, 1990 to April, 1991, because her counsel was leaving the firm and her new counsel would require time to familiarize himself with the case. Plaintiffs' request was granted, and the case was continued to the April term. Trial was continued yet another time, and listed for a July trial date. Although the final continuance was not done at plaintiffs' request and was due to scheduling pressures on the court calendar, the CCR defendants contend that plaintiffs should bear the responsibility for setting and keeping in motion the chain of delays that ultimately resulted in the case being tried some two years after the filing date.

We find that the following periods are not excludable:

1. March 30, 1990 to June, 1990; and

2. October 16, 1990 to July 8, 1991.

The period from May, 1990 to October, 1990 is excludable.

---

15. Pa.R.Civ.P. 238(a)(2).

16. In the commentary to Rule 238, the Pennsylvania Supreme Court stated:

... [N]ot every procedural delay is relevant to the issue of delay damages, but only such occurrences as actually cause delay of the trial. For example, failure by the plaintiff to answer interrogatories within thirty days should not affect the award of damages for delay unless the trial was delayed as a result. Otherwise, the introduction of the fault concept and its attendant hearing would create a large new field of court hearings revolving around evidence of dilatory compliance with discovery procedures, the evidence of which would consist almost entirely of the attorneys testifying against each other and could be years old before the hearing.

■ The continuance from the May, 1990 trial list to the June, 1990 trial list was granted pursuant to a request by defendant OCF to allow additional discovery time. Periods of delay attributable to circumstances not caused by plaintiffs are not excluded from the calculation period. Delays in discovery are not imputed to the plaintiff "unless it is demonstrated that the plaintiff failed to take reasonable steps in preparing diligently toward trial." *Bywaters v. Bywaters*, Civil No. 86–6973, slip op. at 2, 1991 WL 58492 (E.D.Pa. April 12, 1991). Although OCF stated, as its reason for requesting the continuance, delays on plaintiffs' part in providing certain discovery materials, plaintiff denies that delays on her part necessitated a continuance. Situations such as this are the types of delays that the Pennsylvania Supreme Court intended to be excluded in determining plaintiffs' entitlement to delay damages. If the courts were to delve into such issues, they would become embroiled in resolving credibility issues and disputes among counsel as to alleged dilatory tactics, and every calculation of delay damages would become a protracted affair, necessitating an evidentiary hearing to resolve collateral issues of fault. This is the very result that the courts have sought to avoid in interpreting the rule as they have, and we will not break with precedent. Although Rule 238(c)(1) allows the court, within its discretion, to order a hearing if a request for delay damages raises factual issues, we do not find that a hearing is necessary in this case. The period from March to June, 1990 will, therefore, *not* be excluded from the calculation period.

■ The October, 1990 to July 1991 period encompasses several continuances not of which were the "fault" of plaintiffs. As the CCR defendants chronicle in their brief, plaintiffs requested that trial be continued from October, 1990 to April, 1991 because plaintiffs' counsel was leaving the firm and his replacement would require time to familiarize himself with the case before trial. Although the trial was continued at plaintiffs' request, we find that the reason for that request should be viewed much the same as court delays and other problems over which plaintiffs have no control. Plaintiffs had no control over the fact that her counsel was leaving the law firm, thrusting her into a situation in which new counsel had to take over the case and familiarize himself with it prior to trial. Consistent with the Pennsylvania and federal court opinions interpreting Rule 238, we find that the defendants bear the risk of such delays, just as they bear the risk of delays caused by other circumstances which are not the fault of either party when they elect not to submit a written offer of settlement in conformity with the rule. *Bywaters, supra,* slip op. at 2, 1991 WL 58492 ("Rule 238 does not relieve a defendant from liability for damages caused by administrative delays of the court.... Rather a defendant who fails to make an adequate settlement offer upon the filing of a complaint is responsible for the course of litigation that follows."); *Hilburn v. Deere & Company,* Civil No. 88–3692, slip op. at 7, 1990 WL 119690 (E.D.Pa. August 7, 1990) ("[U]nder Rule 238, plaintiff is not required to prove that defendant was responsible for the delays in order to recover delay damages. On the contrary, the burden rests on defendant to show that plaintiff caused the delays if defendant is to reduce plaintiff's delay damages.... Absent such a showing by defendant, a court should award plaintiff the full amount of delay damages.") and *Schrock, supra,* 589 A.2d at 1106 ("[T]he mere fact that a defendant is not at fault in causing the delay in a case does not automatically relieve the defendant from being assessed delay damages under Rule 238.... [W]hen both parties are blameless it would be unreasonable and unjust to deny delay damages.")

■ The continuance from the June, 1990 trial list to the October, 1990 trial list is a different matter. That continuance was granted at plaintiffs' request so that plaintiffs could have additional time for discovery, and is, therefore, excludable on that basis.

■ Defendants challenge the assessment of delay damages on another ground

as well. They argue that it is unfair to assess damages against them for the period during which they were unable to assess fairly the value of plaintiffs' case. Defendant OCF argues:

... a reasonable period of time should be granted for the parties to engage in discovery and attempt to settle the case prior to penalties being imposed. Defendants were not in a position to evaluate this case for settlement due to additional delays in discovery caused by plaintiff. Plaintiff did not respond to interrogatories until November of 1989. Prior to that time, no settlement discussion could take place as the defendants did not have the necessary product identification information on which to base a reasonable evaluation.

(Record Document No. 227, filed August 1, 1991, pp. 3–4)

There is precedent for tolling the accrual of delay damages if defendants were not in a position to assess fairly plaintiffs' damages. Although the Pennsylvania Supreme Court has not considered whether the courts may consider dilatory conduct of plaintiffs which hinders the evaluation of their claim or the commencement of settlement negotiations tolls the accrual period, *Rosen*, 905 F.2d at 708, the Pennsylvania Superior Court has addressed similar issues. The Superior Court has ruled that it is improper to award the full amount of delay damages against a defendant for a period when the full extent of plaintiff's injuries was unknown.

"[A] party who is sued can only be charged with a duty to make a fair settlement offer when it can be said that he has a full opportunity to wholly assess the claim against him. This would include ... in a bodily injury action a review of the injuries and the prognosis, work loss, verified and related expenses and an assessment of the evidence as it bears on liability.

*Sherrill v. Port Authority of Allegheny County*, 383 Pa.Super. 104, 556 A.2d 450, 460 (1989).

Defendant's argument has merit. We agree that it would be unfair to demand

that defendants make a settlement offer before all information about the claim is properly before them. We are also mindful of the fact that asbestos cases differ from other personal injury cases in one significant respect. In such cases, liability turns on, not so much the conduct of the defendants, as in other cases, but on the quality of proof that the plaintiffs can adduce to establish that the plaintiff was exposed to asbestos-containing products of a particular defendant regularly and over a period of time. Proof of such exposure often dates back forty years, and in cases such as the one at bar in which the plaintiff/worker is deceased, must come from the testimony of co-workers, requisitions forms, or construction records, if available. Frequently, not all of this information is readily available to plaintiffs at the start of the case and requires some time to compile. Thus, it would seem particularly unfair in cases of this sort to demand a settlement offer from a defendant before it has enough information to assess whether there is sufficient proof of exposure to its asbestos products.

On the other side of the equation, we note that there is a built-in window of opportunity for defendants to gather and assess such information before delay damages begin accruing. Under the Rule, delay damages are awarded from the date that the complaint was filed, or from one year after the cause of action accrued, whichever is later.

Taking all of this into account, we find that six months are excludable from the calculation period due to plaintiffs' delay in responding to basic interrogatories from OCF seeking, *inter alia*, a list of job sites where plaintiff worked. Defendant OCF's interrogatories, propounded March 8, 1989, went unanswered until October 23, 1989. Plaintiffs have a duty to respond seasonably to discovery requests so that defendants can make an assessment of the case and make a prompt settlement offer, if appropriate, to avoid the imposition of delay damages. We find that a delay of eight months in responding to OCF's interrogatories is unreasonable and that delay dam-

ages should, therefore be denied for a portion of that period. The interrogatories were filed nearly a year after this action was filed, and by that time, plaintiffs certainly should have had enough information at their disposal to prepare a response to defendant's interrogatories, within a maximum of two months. The court will, therefore, exclude the period from May 8, 1989 through October 23, 1989.

■ Defendants' arguments that Rule 238 is unconstitutional under the United States and Pennsylvania constitutions have been addressed and rejected by the federal courts and by the courts of Pennsylvania. See: *Yohannon, supra,* 924 F.2d at 1267; *Simmons v. City of Philadelphia,* Civil No. 87–3258, slip op. at 4 (E.D.Pa. January 10, 1990) (available on WESTLAW at 1990 WL 2192), *order aff'd,* 947 F.2d 1042 (3d Cir.1991), *cert. denied sub nom, City of Philadelphia v. Simmons,* — U.S. —, 112 S.Ct. 1671, 118 L.Ed.2d 391 (New Rule 238 withstands constitutional challenges on due process and equal protection grounds.); *Leonard v. General Motors Corp.,* Civil No. 88–2380, slip op. at 5 (E.D.Pa. August 16, 1990) (available on WESTLAW at 1990 WL 121543); *Hilburn, supra,* slip op. at 7 (Court held that Rule 238 is " 'rationally related' to a legitimate state interest—i.e. to encourage the pretrial settlement of meritorious claims."); *Templin v. Hansford,* 737 F.Supp. 27, 29–30 (E.D.Pa.1990) ("Rule 238 reflects the rational state objective of fostering the settlement of legitimate claims.... Rule 238 has rational and substantial relationships to the legitimate state purpose of encouraging the prompt satisfaction of meritorious claims and its operation and application does not deprive parties of property arbitrarily.");

*Lilley v. Johns–Manville Corp.,* 408 Pa.Super. 83, 596 A.2d 203, 212 (1991); *Yackobivotz v. Southeastern Transportation Authority,* 139 Pa.Cmwlth. 157, 590 A.2d 40, 49–52 (1991) and *Dietrich v. J.I. Case Co.,* 390 Pa.Super. 475, 568 A.2d 1272, 1278 (1990), *appeal denied,* 528 Pa. 610, 596 A.2d 157 (1991) (Rule 238 does not violate the excessive fines clause of the United States Constitution.) Although there has been considerable debate in the Pennsylvania courts over the constitutionality of Rule 238, see, e.g. *Dietrich, supra,* 568 A.2d at 1280; *Schrock v. Albert Einstein Medical Center,* 386 Pa.Super. 215, 562 A.2d 875, 883–85 (1989) (Cirillo, P.J., dissenting) and *Ceresini v. Valley View Trailer Park,* 380 Pa.Super. 416, 421, 552 A.2d 258, 260 (1988) (Cirillo, P.J., dissenting),[17] the Pennsylvania courts have thus far rejected all constitutional challenges to the rule. Defendants have given us no persuasive reasons why we should reexamine the constitutionality of Rule 238 here or depart from the decisions upholding its constitutionality. We, therefore, reject defendants' arguments of unconstitutionality.

Finally, we reach the question of the amount of delay damages to be assessed. In actions commenced before August 1, 1989,[18] as was this case, delay damages are awarded from the date that the complaint was filed (April 29, 1988), or from one year after the cause of action accrued,[19] whichever is later, through the date of the verdict. Pa.R.C.P. 238(a)(2)(i). Delay damages shall be "calculated at the rate equal to the prime rate as listed in the first edition of the *Wall Street Journal* published for each calendar year for which the damages are awarded, plus one percent, not compounded." Pa.R.C.P. 238(a)(3).[20]

17. *Ceresini* was overruled by *King v. Southeastern Pennsylvania Transportation Authority,* 383 Pa.Super. 420, 557 A.2d 11 (1989).

18. In actions commenced on or after August 1, 1989, damages are awarded from a date one year after original process is first served. Pa.R.Civ.P. 238(a)(2)(ii).

19. The parties have not addressed this issue in their briefs, but we presume, based on the facts before us, that the cause of action accrued February 24, 1987, the date Donald Sealover was

diagnosed as suffering from mesothelioma. (Plaintiff's response to interrogatories, filed October 23, 1989, question 13(B)).

This means that delay damages accrue from either February 24, 1988 or April 29, 1988, whichever is later. Pa.R.Civ.P. 238. Obviously, April 29, 1988 is later.

20. The prime rates published in the Addendum to the Explanatory Comment to Pennsylvania Rule 238 and used in calculating the damages awarded to plaintiff are set forth in Appendix 1.

Delay damages are awardable only on that portion of the total verdict for which the non-settling defendants are jointly and severally liable, *Lilley, supra,* 596 A.2d at 206, which in this case is $413,333.33. The jury awarded the estate $400,000.00, or 65.-57% of the total verdict. Alma Sealover, individually, was awarded $210,000.00, or 34.43% of the total verdict. Reduced proportionately by the amounts attributable to the Manville Trust and OCF ($101,666.67 + $95,000.00 = $196,666.67), the estate and Alma M. Sealover, individually, are entitled to recover $271,022.66 and $142,310.55, respectively, plus delay damages.

The estate is entitled to delay damages totalling $67,763.00, calculated as set forth in Appendix 2. Alma M. Sealover, individually, is entitled to delay damages totalling $35,581.50, calculated as set forth in Appendix 3.

Two motions remain outstanding, namely the motion for new trial filed July 30, 1991 on behalf of GAF Corporation and United States Gypsum Company (record document no. 222) and the motion for judgment as a matter of law or, in the alternative, motion for new trial under Rule 59, filed July 29, 1991 on behalf of W.R. Grace & Co. (record document no. 225). These will be deemed filed today for briefing purposes.

\* \* \* \* \* \*

An order will be entered consistent with this memorandum.

## APPENDIX 1

*Prime rates*

The applicable prime rates are published in the Addendum to the Explanatory Comment to Rule 238 and are as follows:

| Date of Publication | Prime Rate |
|---|---|
| January 4, 1988 | 8¾% |
| January 3, 1989 | 10½% |
| January 2, 1990 | 10½% |
| January 2, 1991 | 9½ to 10% |

For 1991 the court has used 9¾%.

## APPENDIX 2

*Calculation of delay damages for the Sealover Estate*

Calculating plaintiff's delay damages according to these rates, we find that the Sealover estate is entitled to delay damages totalling $67,763.00, calculated as follows:

| Time Period | Rate | | | | Delay Damages |
|---|---|---|---|---|---|
| April 29, 1988 through December 31, 1988 | 8.75% | $\times \frac{247}{365}$ days | $\times$ | $271,022.66 | = $16,047.88 |
| January 1, 1989 through May 7, 1989 | 11.5 % | $\times \frac{127}{365}$ days | $\times$ | $271,022.66 | = $10,844.59 |
| October 24, 1989 through December 31, 1989 | 11.5 % | $\times \frac{69}{365}$ days | $\times$ | $271,022.66 | = $ 5,891.95 |
| January 1, 1990 through June 3, 1990 | 11.5 % | $\times \frac{154}{365}$ days | $\times$ | $271,022.66 | = $13,150.15 |
| October 1, 1990 through December 31, 1990 | 11.5 % | $\times \frac{92}{365}$ days | $\times$ | $271,022.66 | = $ 7,855.94 |
| January 1, 1991 through July 12, 1991 | 9.75% | $\times \frac{193}{365}$ days | $\times$ | $271,022.66 | = $13,972.49 |

**TOTAL** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$67,763.00

APPENDIX 3

*Calculation of delay damages for Alma M. Sealover, individually.*

Alma M. Sealover, individually, is entitled to delay damages totalling $35,581.50, calculated as follows:

| Time Period | Rate | | | | | Delay Damages |
|---|---|---|---|---|---|---|
| April 29, 1988 through December 31, 1988 | 8.75% | $\times \dfrac{247}{365}$ days | $\times$ | $142,310.55 | = | $ 8,426.53 |
| January 1, 1989 through May 7, 1989 | 11.5 % | $\times \dfrac{127}{365}$ days | $\times$ | $142,310.55 | = | $ 5,694.36 |
| October 24, 1989 through December 31, 1989 | 11.5 % | $\times \dfrac{69}{365}$ days | $\times$ | $142,310.55 | = | $ 3,093.79 |
| January 1, 1990 through June 3, 1990 | 11.5 % | $\times \dfrac{154}{365}$ days | $\times$ | $142,310.55 | = | $ 6,904.98 |
| October 1, 1990 through December 31, 1990 | 11.5 % | $\times \dfrac{92}{365}$ days | $\times$ | $142,310.55 | = | $ 4,125.06 |
| January 1, 1991 through July 12, 1991 | 9.75% | $\times \dfrac{193}{365}$ days | $\times$ | $142,310.55 | = | $ 7,336.78 |

**TOTAL** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $35,581.50

---

ORDER

For the reasons stated in the accompanying memorandum, IT IS ORDERED THAT:

1. Plaintiffs' motion (record document no. 220, filed July 22, 1992) for delay damages pursuant to Pa.R.Civ.P. 238 is granted to the extent of the relief provided.

2. Plaintiffs' motion (record document no. 221, filed July 22, 1991) for entry of judgment and severance of plaintiffs' case against National Gypsum is denied, as moot.

3. Plaintiffs' motion (record document no. 232, filed September 11, 1991) for entry of judgment and severance of plaintiffs' case against GAF Corporation is denied, as moot.

4. The CCR defendants' motion (record document no. 242, filed December 5, 1991) to treat Johns Manville as a settled defendant and mold the verdict accordingly is granted to the extent of the relief provided.

5. W.R. Grace's motion (record document no. 244, filed December 11, 1991) to mold the verdict and deduct the shares of the settling defendants is granted to the extent of the relief provided.

6. Delay damages in the amount of $67,763.00 are awarded to Alma M. Sealover, as Administratrix of the Estate of Donald Sealover, Deceased.

7. Delay damages in the amount of $35,581.50 are awarded to Alma M. Sealover, individually.

8. The Clerk of Court is directed to enter judgment in the amount of $338,-785.66 in favor of Alma M. Sealover, as Administratrix of the Estate of Donald Sealover, Deceased, and against defendants W.R. Grace Company, United States Gypsum Company, GAF Corporation, and National Gypsum Company, jointly and severally.

9. The Clerk of Court is directed to enter judgment in the amount of $177,-892.05 in favor of Alma M. Sealover, individually and against defendants W.R. Grace Company, United States Gypsum Company, GAF Corporation, and National Gypsum Company, jointly and severally.

10. The motion for new trial filed July 30, 1991 on behalf of GAF Corporation and United States Gypsum Company (record document no. 222) and the motion for judgment as a matter of law or, in the alternative, motion for new trial under Rule 59, filed July 29, 1991 on behalf of W.R. Grace & Co. (record document no. 225) are deemed filed today for briefing purposes. See Fed.R.Civ.P. 59(b) and Local Rules 601 and 602.