996 F.2d 42
 Prod.Liab.Rep. (CCH) P 13,527
Alma M. SEALOVER, in her capacity as Administratrix of the
Estate of Donald E. Sealover, deceased,
v.
CAREY CANADA INC.; Celotex Corp.; Eagle-Picher Industries
Inc.; Fibreboard Corp.; GAF Corp.; Keene Corp.; National
Gypsum Co.; Owens-Corning Fiberglas Corp.; Owens-Illinois
Inc.; Raymark Industries Inc.; Turner & Newell, PLC;
United States Gypsum Co.; US Mineral Products Co.; W.R.
Grace & Company, Third-Party Plaintiffs,
v.
MANVILLE CORPORATION ASBESTOS DISEASE COMPENSATION FUND,
Third-Party Defendant,
Alma M. Sealover, individually and in her capacity as
Administratrix of the Estate of Donald Sealover,
deceased, Appellant No. 92-7375,
W.R. Grace & Co., Appellant No. 92-7429.
 Nos. 92-7375, 92-7429.
 United States Court of Appeals,
Third Circuit.
 Argued March 15, 1993.
Decided June 22, 1993.
 
 Deborah K. Hines (argued), Connerton, Ray & Simon, Washington, DC, for Alma M. Sealover.
 James P. Gannon (argued), Barnard & Gannon, Media, PA, for W.R. Grace & Co.
 Before: STAPLETON, ROTH, and LEWIS, Circuit Judges.
 OPINION OF THE COURT
 LEWIS, Circuit Judge.
 
 
 1
 In 1982, the Johns-Manville Corporation ("Johns-Manville") filed for bankruptcy as a result of the thousands of asbestos-related claims pending against it. The Manville Corporation Asbestos Disease Compensation Fund (the "Manville Trust" or the "Trust") was created in the reorganization that ensued and became a mechanism for the disposition of pending and future asbestos-related personal injury claims against Johns-Manville.
 
 
 2
 In this appeal, we are asked to review the district court's treatment of the Manville Trust as a "settled defendant" for purposes of entering judgment after trial in an asbestos personal-injury case. 791 F.Supp. 1059. Because plaintiff has not settled with the Manville Trust but merely possesses a claim against it, we will reverse the district court and remand for entry of an appropriate judgment. On remand, when amending the judgment, the district court is also to re-compute the amount of delay damages due to the plaintiff, since we also reverse its decision to award damages for delay of trial caused by plaintiff's request for a continuance.
 
 I.
 
 3
 Donald Sealover worked as a carpenter for forty years. He frequently came into contact with products that contained asbestos. Some of these products were manufactured by Johns-Manville. After Mr. Sealover developed malignant mesothelioma, he and his wife, Alma Sealover, filed suit against various defendants who were engaged in the manufacture and sale of products containing asbestos. Soon thereafter, Donald Sealover died and his wife continued the case in her own name, acting both individually and as administratrix of his estate.
 
 
 4
 The case proceeded to trial in July 1991 against defendants GAF Corp. ("GAF"), National Gypsum Co. ("National Gypsum"), U.S. Gypsum Co. ("U.S. Gypsum"), W.R. Grace & Company ("W.R. Grace") and the Manville Trust. Prior to trial, Mrs. Sealover settled her claims against defendant Owens-Corning Fiberglas Corporation ("OCF").
 
 
 5
 At the conclusion of the trial, the district court added OCF to the verdict sheet. Thus, the jury considered whether six defendants--GAF, National Gypsum, U.S. Gypsum, W.R. Grace, the Manville Trust and OCF--were strictly liable to the plaintiff. It found that all were liable and awarded $210,000 to Alma Sealover individually and $400,000 to the estate of her husband.
 
 
 6
 Later, the district court granted a motion by GAF, National Gypsum, U.S. Gypsum and W.R. Grace to treat the Manville Trust as a settled defendant and to mold the verdict to account for the settlements of both the Manville Trust and OCF. It thus entered judgment jointly and severally against defendants GAF, National Gypsum, U.S. Gypsum and W.R. Grace and in favor of Alma Sealover as administratrix of her husband's estate in the amount of $333,321.40, which represented the $400,000 jury award reduced by one-sixth for each settled defendant and then increased by delay damages, and in favor of Alma Sealover individually in the amount of $175,022.96, which represented the $210,000 awarded by the jury reduced by two-sixths and then increased by delay damages.
 
 
 7
 The effect of the district court's judgment was to require Mrs. Sealover to pursue the Manville Trust separately for the one-sixth share of responsibility the jury had placed upon it. In contrast, had the district court declined to treat the Manville Trust as a settled defendant, judgment would have been entered against it, along with GAF, National Gypsum, U.S. Gypsum and W.R. Grace in an amount that would have been reduced by only the one-sixth attributed to Mrs. Sealover's pretrial settlement with OCF. In the latter situation, the co-defendants would have been required to ensure that the entire amount of the judgment was satisfied while they, rather than Mrs. Sealover, pursued the Manville Trust for contribution.
 
 
 8
 Mrs. Sealover appeals, contending that the district court should not have treated the Manville Trust as a settled defendant. W.R. Grace cross-appeals,[1] arguing that while the district court appropriately treated the Manville Trust as a settled defendant, it erred by awarding an excessive amount of delay damages.
 
 
 9
 The district court had jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1), and we exercise jurisdiction pursuant to 28 U.S.C. § 1291. The facts before us are not in dispute, but the parties take exception to the district court's interpretation and application of the law. Thus, our review is plenary. Gregoire v. Centennial School District, 907 F.2d 1366, 1370 (3d Cir.1990). See also Manor Care, Inc. v. Yaskin, 950 F.2d 122, 124 (3d Cir.1991); International Union, UAW v. Mack Trucks, Inc., 917 F.2d 107, 110 (3d Cir.1990).
 
 II.
 
 10
 Johns-Manville was the nation's leading producer of asbestos-containing products when, in August, 1982, it filed for bankruptcy under the weight of thousands of asbestos-related personal injury lawsuits. In re Joint Eastern & Southern Districts Asbestos Litigation, 120 B.R. 648, 651 (E. & S.D.N.Y.1990). The resulting plan of reorganization established a trust from which asbestos-related claims would be paid. See generally Kane v. Johns-Manville Corp., 843 F.2d 636, 640 (2d Cir.1988), aff'g In re Johns-Manville Corp., 68 B.R. 618, 621-22 (Bankr.S.D.N.Y.1986). It also imposed a procedural requirement that plaintiffs attempt to settle their claims before proceeding to trial against the Manville Trust. Kane, 843 F.2d at 640; In re Joint Eastern & Southern Districts Asbestos Litigation, 129 B.R. 710, 754 (E. & S.D.N.Y.1991), vacated on other grounds Findley v. Blinken, 982 F.2d 721 (2d Cir.1992), modified 993 F.2d 7 (2d Cir.1993). The bankruptcy court enjoined all asbestos-related personal injury claims against Johns-Manville except as provided for under this procedure. Kane, 843 F.2d at 640. Thus, "the Trust became the exclusive entity from which to seek compensation for existing and future asbestos health claims caused by exposure to Johns-Manville products." Joint Litigation, 129 B.R. at 752.
 
 
 11
 This attempt at managing the claims was not entirely successful, however. It became clear that the Trust would be unable to satisfy the claims against it. Eventually, the judge who oversaw the Johns-Manville bankruptcy urged the parties to consider a "limited fund" class action lawsuit with an eye toward reaching a global settlement of all claims. See Findley, 982 F.2d at 727. This resulted in the certification of a class and a stipulation of settlement. See Joint Litigation, 129 B.R. 710.
 
 
 12
 The settlement in Joint Litigation prompted the defendants in this case to ask the district court to treat the Manville Trust as a settled defendant. We cannot sustain their position, however, for two reasons. First, as the Court of Appeals for the Second Circuit recognized in In re Brooklyn Navy Yard Asbestos Litigation, 971 F.2d 831 (2d Cir.1992), the process approved by the district court in Joint Litigation (the "Findley settlement") provided a structure for settlement but did not automatically effect the settlement of any claim. Id. at 843. ("Although the Findley settlement may resemble a settlement of plaintiffs' individual claims against the Trust, it does not actually settle those claims. The distinction between a settlement and a structure for settlement is real, and in this case it is dispositive.") All claimants against the Manville Trust were required to go through that process, but any claimant who declined to settle in the course of the process retained his or her claim and was entitled to proceed to trial. Id. at 843.
 
 
 13
 Second, the process approved by the district court in Joint Litigation is no longer in place. In December 1992, the United States Court of Appeals for the Second Circuit decided the Findley case, vacating the opinion approving the stipulation of settlement in Joint Litigation. The court ruled that sub-classes of Trust beneficiaries must negotiate separately rather than as one class, as had been done in order to achieve the Joint Litigation settlement. Findley, 982 F.2d 721. Thus, it is crystal clear that W.R. Grace cannot now claim that the plaintiff has settled with the Manville Trust. Persons who allege asbestos-related injury have only claims against, not settlements with, the Trust, and retain their right to a jury trial should they forego settlement.
 
 
 14
 In this case, plaintiff has neither received payment from nor engaged in meaningful settlement negotiations with the Manville Trust. See appendix at 82-84. Nor has she released the Manville Trust from liability, under any definition of the term "release." See 42 Pa.C.S.A. §§ 8321-8327; Complaint of Bankers Trust Co., 752 F.2d 874, 883 (3d Cir.1984); Macy v. United States, 557 F.2d 391, 393 (3d Cir.1977).
 
 
 15
 Conceding as much at oral argument, W.R. Grace no longer urges that we adopt the district court's decision; instead, it seeks a remand to the district court in light of Ottavio v. Fibreboard Corp., 421 Pa.Super. 284, 617 A.2d 1296 (1992). In Ottavio, which was decided after the district court molded the verdict in this case, the Pennsylvania Superior Court upheld a trial court's refusal to permit a jury to apportion liability among both bankrupt and solvent defendants. Ottavio stands for the complementary propositions that juries should apportion liability only among solvent defendants while bankrupt defendants should not appear on verdict sheets.
 
 
 16
 Without addressing the question of whether the propriety of the verdict sheet is properly before us, W.R. Grace's suggestion has some extrinsic merit. It was "Johns-Manville," the bankrupt entity, rather than the "Manville Trust," which appeared on the verdict sheet, raising an inference that the verdict sheet may have been improperly drafted after Ottavio. Appendix at 156-57. It is also true that Mrs. Sealover would still receive the full amount of the verdict were we to accept W.R. Grace's proposal. Judgment would be entered against W.R. Grace for the amount of the verdict which would remain after it was molded to account for the settlements of OCF, GAF, National Gypsum and U.S. Gypsum, and the defendants' respective liabilities for contribution among each other would be redistributed.
 
 
 17
 While we acknowledge the practical implications of W.R. Grace's position, however, we decline to extend Ottavio to this case for two reasons. First, it was the Trust, not Johns-Manville, which was named as a defendant in this lawsuit, thus distinguishing this case from Ottavio. See appendix at 92, 117-21, 152-54. Presumably, the district court listed Johns-Manville on the verdict sheet because products were identified at trial as having been manufactured by "Johns-Manville" whereas the name "Manville Trust" would have meant little or nothing to the jury.
 
 
 18
 Second, and perhaps more important, to treat the Manville Trust as a bankrupt defendant in this context would imply that plaintiff violated the automatic stay provisions of the Bankruptcy Code by pursuing her case against it, an implication which is clearly incorrect and which we are unwilling to indulge.
 
 
 19
 Instead, since the Findley decision makes clear that the plaintiff has not settled her claim against the Manville Trust, we will reverse the district court's decision insofar as it ruled that she had, and remand for entry of an appropriate judgment. The district court should have included the Manville Trust among the defendants against whom judgment was to be entered jointly and severally. Four of those defendants have settled; accordingly, a judgment should be entered against W.R. Grace and the Manville Trust so that they will be jointly and severally responsible for two-sixths of the damages awarded.
 
 III.
 
 20
 On remand the district court must also re-compute the amount of delay damages due to the plaintiff because it included in its assessment damages for delay of trial brought about by her request for a continuance.
 
 
 21
 Rule 238 of the Pennsylvania Rules of Civil Procedure entitles a prevailing plaintiff to delay damages if the verdict rendered was more than 125 percent of any written settlement offer extended by the defendant in compliance with the Rule. In other words, upon motion, a prevailing plaintiff may receive an amount representing interest earned on his or her eventual recovery during the time the case was pending. See Knight v. Tape, Inc., 935 F.2d 617, 628-29 n. 11 (3d Cir.1991). Although denominated and promulgated by the Pennsylvania Supreme Court as a procedural rule, Rule 238 is substantive in nature and thus applies to cases brought in federal court. See id. at 622 n. 4.
 
 
 22
 Delay damages are not intended to punish defendants; they are intended "to alleviate court congestion by promoting earlier settlement of claims." Schrock v. Albert Einstein Medical Center, 527 Pa. 191, 196, 589 A.2d 1103, 1106 (1991). See also Fauber v. KEM Transportation and Equipment Co., Inc., 876 F.2d 327, 332 n. 15 (3d Cir.1989). Consistent with that intent, defendants may shield themselves from liability for delay damages in two ways. First, they may tender an appropriate written settlement offer in a timely fashion. Schrock, 527 Pa. at 196-97, 589 A.2d at 1106. Alternatively, they may "show that the conduct of the plaintiff throughout the course of litigation has delayed trial." Id. at 197, 589 A.2d at 1106; Pa.R.Civ.P. 238(b)(2). Defendants must, however, bear the cost of trial delays for which no party was responsible, such as those resulting from calendar congestion. Schrock, 527 Pa. at 197-98; 589 A.2d at 1106.
 
 
 23
 In this case, the district court awarded delay damages for a period of time which included the five and a half months between October 16, 1990, when this case was first listed for trial, and April, 1991.[2] Plaintiff had requested a continuance for this period because her attorney was leaving the law firm which represented her and her new attorney needed time to become familiar with the case.
 
 
 24
 The Pennsylvania Supreme Court has not addressed the issue of whether delay damages may be awarded under these circumstances; accordingly, we must predict how that court would rule based upon intermediate appellate decisions. See Patterson v. American Bosch Corp., 914 F.2d 384, 391 (3d Cir.1990). Our review of decisions of the Pennsylvania Superior Court mandates reversal of the district court's decision.
 
 
 25
 In Wirth v. Miller, 398 Pa.Super. 244, 580 A.2d 1154 (1990), appeal granted sub nom, Campbell v. Miller, 527 Pa. 628, 592 A.2d 1296 (1991), the Pennsylvania Superior Court ruled that the period of time a trial was delayed due to a continuance requested by the plaintiff should be excluded from the period for which delay damages are awarded. Wirth, therefore, compels the conclusion that the continuance plaintiff requested in this case is time "during which the plaintiff caused delay of the trial" and thus should have been excluded from any delay damages calculation.
 
 
 26
 Plaintiff argues that she should receive delay damages for the period between October 16, 1990 and April, 1991 because she personally cannot be faulted for her attorney's departure from his law firm and the resulting need for new counsel to become familiar with the case. We cannot agree, for, absent some indication from the Pennsylvania state courts to the contrary, we think it self-evident that a continuance requested by the plaintiff is caused by the plaintiff, whether it was the plaintiff personally or her attorney who required the continuance. To apply the narrow construction sought by the plaintiff to Rule 238 would be to ignore the natural and ordinary usage of the terms "plaintiff" and "defendant," which encompass references to parties and their counsel alike. See Institute for Scientific Information, Inc. v. United States Postal Service, 555 F.2d 128, 131 (3d Cir.1977), quoting Caminetti v. United States, 242 U.S. 470, 485-86, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917) (statutory words are presumed to be used in their " 'ordinary and usual sense, and with the meaning commonly attributed to them' "); Treaster v. Township of Union, 430 Pa. 223, 228, 242 A.2d 252, 255 (1968) ("[w]ords used in a statute are not lightly to be given a meaning other than their normal one").
 
 
 27
 Pennsylvania case law supports this conclusion. In Babich v. Pittsburgh & New England Trucking Co., 386 Pa.Super. 482, 563 A.2d 168 (1989), for example, the Pennsylvania Superior Court affirmed a trial court's denial of delay damages when delay of trial could be attributed to two causes: plaintiff's inability to obtain relief from the Bankruptcy Code's automatic stay in order to pursue one of the defendants and her "failure to place the case at issue in a speedy fashion." Babich, 386 Pa.Super. at 487, 563 A.2d at 170-71. The plaintiff in Babich could not have been personally responsible for these impediments to trial, yet the court ruled that she should not receive damages for delay because Pennsylvania law " 'disallow[s] recovery of delay damages where it is the plaintiff who has caused the delay.' " Id., 563 A.2d at 171, quoting DeLuca v. Smaller, 385 Pa.Super. 546, 550, 561 A.2d 810, 812 (1989).[3] We interpret Babich to suggest that the presence or absence of personal fault in causing delay is immaterial for purposes of Rule 238(b)(2). See also Wirth, 398 Pa.Super. 244, 580 A.2d 1154 (court did not inquire into the reason for the continuance requested when it made its decision).
 
 
 28
 Therefore, we will reverse the district court's computation of the delay damages to be awarded to the plaintiff.
 
 IV.
 
 29
 In conclusion, we will reverse the district court's decision to treat the Manville Trust as a settled defendant and its calculation of delay damages. The judgment of the district court will be vacated and this case remanded for entry of judgment consistent with this opinion.
 
 
 
 [1]
 Originally, four defendants filed cross-appeals, but GAF, National Gypsum and U.S. Gypsum settled their disputes with the plaintiff, withdrew their appeal and withdrew as appellees on the plaintiff's appeal. Thus, the only remaining appellee/cross-appellant is W.R. Grace
 
 
 [2]
 The district court awarded delay damages for 882 days of the three-plus years during which this case wended its way to trial. Because W.R. Grace only challenges the award of damages for the period between October 16, 1990 and April, 1991, however, we need not consider the propriety of the remainder of the award
 
 
 [3]
 The trial court in Babich had decided the delay damages issue under Pennsylvania law predating the current version of Rule 238, but the Superior Court examined the issue under both that law and the current version of Rule 238